TEXAS CHRISTIAN UNIVERSITY et al.

v.

BURGETT et al.

No. 3062.

Court of Civil Appeals of Texas.

Eastland.

April 2, 1954.

Rehearing Denied April 30, 1954.

Morgan & Shropshire, Ft. Worth, Joe B. Gracey, Breckenridge, Ernest May, Ft. Worth, for appellants.

C. B. Long, Gordon, Frank Sparks, Eastland, Creighton & Creighton, Mineral Wells, for appellees.

COLLINGS, Justice.

This is a suit for a declaratory judgment to construe a contract. It was brought by plaintiffs, Charlie Burgett, Chester Burgett and Edna Duncan Rader, who are heirs at law of Mrs. J. W. (Joe B.) Conway, deceased, against Texas Christian University, residuary legatee under Mrs. Conway's will, and against Joe K. Orndorff and Robert M. Barton, independent executors of the will and trustees of the residuary estate. The plaintiffs had filed a contest of the will but before the matter was brought to trial in the probate court, they entered into a compromise agreement with Texas Christian University and withdrew the contest. The will was then admitted to probate and the executors and trustees duly qualified. The will provided for numerous specific bequests and that all taxes, whether estate, inheritance or ad valorem, should be paid by the executors and charged as part of the expense of administration. The point of controversy is the relative liability of the plaintiffs and the University with respect to that part of the Federal Estate tax determined by the Commissioner of Internal Revenue to have been assessable on account of the compromise of the will contest. The executors of the estate have paid, under protest, the entire amount of such Federal Estate tax determined by the Commissioner, to be due.

The relevant portions of the contract in question which was introduced in evidence as plaintiffs' Exhibit No. 5, are as follows:

"2. It is agreed that the independent executors appointed in said will, to-wit: Robert M. Barton and Joe K. Orndorff, shall be requested to qualify as such independent executors and to act in that capacity until all debts of the estate (if any) and all administration expenses are paid and until all state and county and local ad valorem taxes on the properties of the estate are paid and until all Federal estate taxes are paid and until all state inheritance taxes are paid and until all specific bequests contained in the will and the three codicils are delivered to the respective beneficiaries named in such specific bequests. When the above mentioned duties of the executors are completely performed they will cease to act in that capacity and will thereafter act in the capacity as trustees as hereinafter provided.

"3. All Federal estate taxes shall be paid out of the residuary estate that will remain after all specific bequests have been satisfied or provided for, however, it is contemplated that there will be no Federal estate taxes and no state inheritance taxes payable on any of the residuary estate, in the event any such taxes should be assessable against any part of the residuary estate, then and in that event their proportionate part of such taxes shall be paid by the heirs at law herein named. In view of the fact that several of the specific bequests made by Mrs. Conway are exempt from any state inheritance tax and the total inheritance tax liability will not be a large amount, it is agreed that all state inheritance taxes assessable against any of the beneficiaries of specific bequests, except Chester Burgett, Charlie Burgett, and Mrs. Edna Duncan Rader, may be paid out of the residuary estate. In this connection, it is noted that no inheritance tax will be due from Chester Burgett or Mrs. Rader, but a small tax may be due from Charlie Burgett, in which event it shall be paid out of the specific bequest made to him.

"4. After the duties of said Barton and Orndorff as independent executors have been completed, they or the survivor of them shall act as trustees or trustee of the residuary estate, and are hereby appointed as such trustees. It shall be their duty as trustees to sell the properties, both real and personal, of the residuary estate and to do so in an orderly way, avoiding the sacrifice of any properties. They shall endeavor to in that way liquidate the residuary estate within five years after the date the will and codicils are probated. If such liquidation should not be complete at the end of such five-year period, then said trustees shall immediately deliver the undisposed or remnant of the residuary estate to Chester Burgett, Charlie Burgett, Mrs. Rader and Second Party herein, whereupon this trust shall terminate. If such a remnant exists and is so delivered, then Chester Burgett, Charlie Burgett and Mrs. Radar shall own an undivided one-half of same and Second Party the other half, and partition may be had by agreement or by suit in court.

\* \* \* \* \* \*

"6. The necessary and reasonable expenses of handling and converting into money said residuary properties, including necessary legal services and including a commission of five per cent on sales of physical assets and on collections of notes and accounts, but not on collections of bonds, shall be retained by said trustees and be divided equally between them.

"7. After all administration expenses, all Federal estate taxes, all state inheritance taxes and all ad valorem taxes owing at the time of Mrs. Conway's death have been paid and all commissions earned by the trustees have been deducted and all necessary and reasonable expenses provided for in Paragraph 6 hereof have been paid and a sufficient reserve has been set apart to take care of expenses about to accrue, such as upkeep, insur-

ance, ad valorem taxes nearly due and the like, then said trustees shall at the end of each ninety (90) day period pay to Second Party all remaining moneys on hand, and within ten (10) days after each such payment Second Party shall pay to said Chester Burgett, Charlie Burgett and Mrs. Radar a sum of money equal to 50 per cent of the amount so received by Second Party, after making proper adjustment for estate and inheritance taxes as provided in Paragraph 3. Such payment shall be made by depositing the money in the First National Bank of Gordon, Texas, to the joint credit, in a single account of Chester Burgett, Charlie Burgett and Mrs. Edna Duncan Rader."

The court filed findings of fact and conclusions of law in which it was found that Texas Christian University, an educational institution incorporated under and by virtue of the laws of the State of Texas, was the residuary legatee under the terms of the will and that plaintiffs are niece and nephews of Mrs. J. W. Conway, deceased, her next of kin and only heirs at law. The following findings were also made by the court:

"9. I find that in compromise and settlement of the matters and things in controversy in said contest, the contract introduced in evidence as Plaintiffs' 'Exhibit 5' was duly executed by the Plaintiffs and by the Defendant, Texas Christian University.

"10. I find that such contract of settlement was prepared by the attorneys for Texas Christian University.

"11. I find that after said contract had been prepared the attorneys then representing the plaintiffs herein, the heirs of Mrs. Joe B. (J. W.) Conway, deceased, declined to execute the same in the form as prepared by the attorneys for the Defendant, Texas Christian University.

"12. I find that the interlineation of the words 'their proportionate part' appearing in paragraph three (3) of the aforesaid contract of settlement were, by agreement of attorneys for all parties, inserted in the contract.

"13. I find that said contract after such interlineation was made was duly executed by all parties thereto, said contract being referred to as Plaintiffs' 'Exhibit 5.'

"14. I find that prior to the institution of this suit, Robert M. Barton and Joe K. Orndorff, executors, had made two remittances or payment of installments to Texas Christian University as provided for in said contract of settlement, and that Texas Christian University within ten days after receipt of such installments submitted to Robert M. Barton and Joe K. Orndorff, trustees, a sum equal to one-half (½) the amount received by it.

"15. I find that prior to the execution of the contract introduced in evidence as Plaintiffs' 'Exhibit 5', the Plaintiffs, through their attorneys, submitted to Texas Christian University, through its attorneys, a proposition in writing for settlement of the contest of the will of the said Mrs. Joe B. (J. W.) Conway, which proposition in writing was introduced in evidence as Plaintiffs' 'Exhibit 6.'

"16. I find that Texas Christian University, through its executive committee accepted the proposition of settlement in writing so submitted to it by the Plaintiffs through their attorneys.

"17. I find that the Defendant, Texas Christian University, through one of its attorneys, W. O. Gross, notified Plaintiffs' attorneys that Texas Christian University had accepted such proposition of settlement.

"18. I find that the Plaintiffs nor their attorneys were never advised by the Defendant, Texas Christian University, or the attorney representing them, that the settlement outlined in

the proposition made by Plaintiffs to Defendant was not acceptable in all of its terms.

"19. I find that the Plaintiffs and Plaintiffs' attorneys had no knowledge and were never advised that the proposition of settlement so submitted was not acceptable to Texas Christian University in all of its terms.

"20. I find that from all of the evidence and attending circumstances that it was the agreement and intention of all of the parties that the executors should pay out of the residuary estate all expenses, taxes, ad valorem taxes, and Federal estate taxes assessed, and after payment of all such expenses, ad valorem taxes and Federal estate taxes, the executors, Robert M. Barton and Joe K. Orndorff should remit to Texas Christian University in installments the net amount received by them from the estate, and that said executors should in turn remit to Texas Christian University such proceeds, and that Texas Christian University should, within ten (10) days after receipt of such remittances, forward to Robert M. Barton and Joe K. Orndorff a sum of money equal to one-half (½) of each installment or payment so received by it.

\* \* \* \* \* \*

"Conclusions of Law:

"1. I conclude as a matter of law that the contract marked Plaintiffs' 'Exhibit 5' is not ambiguous.

"2. I conclude as a matter of law that Plaintiff is entitled to judgment declaring the rights of the parties under the contract.

"3. I conclude as a matter of law that under the terms of the contract the executors are to pay out of the residuary estate all expenses, taxes, ad valorem taxes and Federal estate taxes, and after payment of all such expenses, taxes, ad valorem taxes, and Federal estate taxes, and after pay-

ment of all special bequests of the will of Mrs. Joe B. (J. W.) Conway, deceased, shall remit to Texas Christian University in installments the net amount received by them from the estate, and that Texas Christian University shall, within ten (10) days after receipt of such remittances, forward to Robert M. Barton and Joe K. Orndorff, trustees, a sum of money equal to one-half (½) of each installment or payment so received by it."

Judgment was rendered that Texas Christian University, upon receipt from the trustees of payments from the residuary estate, should, within ten days pay one-half of such amount to the trustees for the heirs. Texas Christain University has appealed.

Appellant urges in its second and third points that the court erred in receiving extrinsic evidence to vary the terms of the contract and in considering such evidence to determine the agreement and intention of the parties to the contract which was as a matter of law not ambiguous. The case was tried before the court without a jury.

Appellees, who were plaintiffs in the trial court, alleged that the contract was ambiguous and plead facts and circumstances to show that the intention of the parties was for appellees to receive payments of one-half the installment payments paid by the trustees to the University. In the alternative, they alleged that if the contract was free from ambiguity, the meaning was for appellees to receive one-half of such payments. If a contract is ambiguous, surrounding facts and circumstances as related to the contract as a whole, are admissible to determine what the parties intended. If a contract is not ambiguous then the intent must be determined as a matter of law from the wording of the contract as a whole and parol or extrinsic evidence is not admissible to vary its terms. This determination is to be made by the court, as a matter of law. If an unambiguous contract is correctly construed and interpreted according to its terms as a whole, the fact that extrinsic evidence was

admitted or that findings of fact were made on an alternative theory of the plaintiffs' case is immaterial and does not constitute reversible error. Appellant's second and third points are overruled.

 It is contended by appellant in other points that the court erred in holding appellees entitled to one-half of the net proceeds of the residuary estate. It is urged that there should be a proper adjustment for estate taxes as provided in paragraph 7 of the contract. We overrule these points. In our opinion, the trial court properly held that the University was required, under the contract, to remit one-half of the net residuary proceeds to the heirs. If this was not the clear and unambiguous meaning of the contract, it was plainly the intention of the parties when the contract is considered in connection with the facts and circumstances surrounding the execution of the contract.

It was provided in paragraph 3 of the contract that if any Federal estate taxes should be assessable against any part of the residuary estate, then in that event "their proportionate part" of such taxes should be paid by the heirs at law who are appellees herein. Appellant's contention is that the contract should be construed to mean that appellees agreed to pay "their proportionate part" of the estate taxes "assessable against the transfer of any part of the residuary estate" and that the heirs' proportion of the taxes was by the contract expressly related to their interest in the part of the residuary estate not deductible under Section 812(d) of the United States Internal Revenue Code, 26 U.S. C.A. § 812(d); that Texas Christian University as an educational institution was exempt from the payment of such taxes under the Code except that the deduction by reason of such exemption was subject to and reduced by the amount of any taxes which were payable out of the portion of the estate to be received by it; that each participant of the residuary estate under the contract simply became bound to pay his own taxes, except that beneficiaries of special bequests, other than appellees, were relieved of the responsibility for taxes thereon, which taxes were to be paid out of the residuary estate before division and would, therefore, in effect, be borne one-half each by the University and appellees. Appellant urges that the above is a reasonable interpretation of the contract as a whole and that so long as "their proportionate part" could mean something else than 50 per cent the court was not authorized to annul the privilege of the University to make "proper adjustment for estate taxes" before remitting to appellees one-half the receipts from the trustees. In consequence, it is urged by appellant that before division of the net residuary proceeds there should be "proper adjustment for estate taxes."

We cannot agree with appellant's interpretation or definition of the term "their proportionate part" of any such taxes assessed against any part of the residuary estate. The interpretation urged by appellant is unquestionably not the clear and unambiguous meaning of the contract. According to the contract, the University was required within ten days after receipt from the trustees of any payment from the net proceeds of the residuary estate, to pay to appellees a sum of money equal to 50 per cent of the amount so received, after making adjustment for taxes as provided in paragraph 3. The provision in paragraph 3 was not that the heirs would pay all of the taxes related to their interest in the part of the residuary estate which was not deductible under the Internal Revenue Code. Such an interpretation does violence to the language of the contract. The contract requires the heirs to pay only "their proportionate part of such taxes." Paragraph 3 provided that the heirs would pay "their proportionate part of such taxes." The words "such taxes," for the purposes under consideration, refers to *any Federal estate taxes* assessable against *any part* of the residuary estate. (Italics ours.) The words "any part of the residuary estate" refer to the part of the residuary estate which under the terms of the contract is to be transferred to and received by the heirs and also to that part to be received

and retained by the University. On each such part of the residuary estate the heirs by the contract were required to pay their proportionate part of the taxes and only their proportionate part thereof. A proportionate part of the taxes assessed against either part of the residuary estate is plainly not all of the taxes assessed against any part of the residuary estate. The part of such taxes which appellees agreed to pay was by the language of the contract in proportion to something. In our opinion, the heirs' obligation for Federal estate taxes under the contract was in proportion to their interest in the residuary estate. Since the heirs were to receive 50 per cent of the residuary estate "their proportionate part" of any taxes thereon would be 50 per cent of such taxes.

Such an interpretation of the term "their proportionate part" does not result in a conflict with the provision in paragraph 7 of the contract that appellees were to receive 50 per cent of the residuary estate after "making proper adjustment" for estate taxes "as provided in paragraph 3." Appellant urges that the result of such an interpretation is that there is no adjustment to be made for taxes and the language providing for an adjustment is, therefore, rendered meaningless. This result, however, does not overcome the generally accepted meaning of the words "their proportionate part" and require that such words be so defined that an adjustment must be made nor does it make the contract ambiguous. The generally accepted meaning of the words "their proportionate part" as applied to the contract as a whole is in our opinion controlling. If the term "their proportionate part" when considered in connection with the provision in paragraph 7 for a "proper adjustment" for taxes should be held to render the contract ambiguous and uncertain, then the facts and circumstances in evidence surrounding the execution of the contract still justify the judgment entered. The evidence shows that on April 15, 1953, prior to the execution of the compromise contract in question, the attorneys for appellee heirs submitted the following proposition to Judge Robert M. Rowland, an attorney for Texas Christian University:

"Dear Judge:

"As attorney representing Chester Burgett, Charlie Burgett and Mrs. Edna Duncan Rader, whom we represent to be the sole and only heirs at law of Mrs. Joe B. Conway, Deceased, we offer by way of compromise, and without prejudice, and for acceptance within 10 days from this date, this proposition:

"(1) The will of Mrs. Joe B. (J. W. Conway) to be probated, together with the three codicils thereto.

"(2) The Executors appointed in said will, to carry out the provisions of said will and codicils and to make all deliveries and transfers necessary, and to pay all estate taxes accruing on said estate, out of the residuary thereof, and all inheritance taxes chargeable to each beneficiary, out of his, her or its respective share or property, and necessary expenses in connection therewith, except that the residuary estate is to be held in trust by Robt. M. Barton and Joe K. Orndaff, as Trustees, until the same can be by them liquidated by orderly sale, in no event longer than 5 years after date of probate of will.

"(3) Every ninety days the said Trustees to pay to Texas Christian University the proceeds of all sales, holding in reserve however a sufficient fund for taxes, upkeep, insurance, expenses and other requirements.

"(4) Within 10 days after each distribution as provided in paragraph 3, Texas Christian University to pay to Chester Burgett, Charlie Burgett and Mrs. Edna Duncan Rader, Jointly a sum of money equal to 50% of the amount received by it in each such distribution, such payment to be made by deposit to their credit in the First National Bank, Gordon, Texas.

"(5) The prices and terms of the sale of the various items of property in the residuary estate shall be submitted by the Trustees to C. B. Long, representing the Conway heirs, and ———— representing T.C.U., and approved by them before each respective sale is completed.

"(6) The necessary and reasonable, expenses of handling and converting into money said residuary property, including a commission of 5% on sales of physical assets, and on collection of bonds, to be divided equally between said Trustees, to be paid by said Trustees.

"Yours very truly,
"C. B. Long
"Frank Sparks
"J. R. Creighton
"Attorneys for
 Mrs. Joe B. Conway Heirs..
"By: J. R. Creighton (Signed)."

In connection with the negotiations between the parties, Hon. W. O. Gross, an attorney for Texas Christian University, testified as follows:

"A. Well,. of course, I don't remember the words of the conversations. I can just state in substance what they were.

"Q. All right, sir, what were they? A. In substance they were that Texas Christian University and the heirs of Mrs. Conway would jointly participate in the net results of the estate. In other words, Texas Christian University should have fifty per cent of the net residue and the Conway heirs a like amount. That is the way I understood the conversations.

"Q. Was this proposition of settlement in writing that was prepared in your office, was it later forwarded to Judge Rowland? A. I forwarded it to Judge Rowland, I think. I have here in my file a copy of the letter that is in evidence which was addressed to all of us under date April 25th, and having read it reminds me that I was phoned by Judge Rowland and notified you, by phone or in person, the records of the Executive Committee of Texas Christian University had approved this proposition in substance, and that Judge Rowland would draw up a contract.

"Q. You did notify counsel for the Conway heirs of such acceptance? A. Yes, sir.

"Q. Do you know who prepared the contract, Mr. Gross? A. Yes, sir; Judge Rowland did."

The compromise proposition was presented by Judge Rowland to the Executive Committee of Texas Christian University and the Committee, by resolution, accepted the proposition in substance, leaving minor details to be worked out and agreed upon by the attorneys.

Judge Rowland, on April 25, 1950, wrote the following letter to the attorneys for appellees and other attorneys for the University, enclosing a proposed draft of the contract:

"Gentlemen:

"The attorneys for Chester Burgett, et al. were informed yesterday of the fact that the Executive Committee of Texas Christian University met last Saturday and accepted in substance the written compromise proposition that Mr. Creighton handed to Mr. Gross on April 15.

"There is one minor modification of the compromise terms that seems to me to be called for. The will says that the executors are to pay all taxes due, including Federal Estate Tax, State Inheritance Taxes and Ad Valorem Taxes, out of the residuary estate, so that each beneficiary of a specific bequest will get his, her or its bequest tax free. Paragraph 2 of the proposition signed by Mr. Creighton for himself and the other attorneys for the heirs provides that each beneficiary of a specific bequest will pay the state inheritance tax chargeable against the

recipient of that bequest. The legatees to whom specific bequests were made are so numerous and scattered that I do not think it is practicable to get them to sign a contract allowing deduction of state inheritance taxes from the values, in money or property, coming to them under the will or the codicils.

"Accordingly, in drawing the contract, copy of which is herewith enclosed, I have avoided the necessity of trying to make all the specific legatees parties to the contract and getting them to agree to stand part of the inheritance tax, contrary to the terms of the will. I believe you will agree with me on this matter.

"What the three heirs at law will get out of the residuary estate by virtue of this compromise will not be subject to a state inheritance tax. See Crane v. Mann, Tex.Civ.App., 162 S.W.2d 117 (Writ Ref.). According to that decision, the will being admitted to probate, T.C.U. would have to pay the inheritance tax on the entire residuary estate if it had no exemption on account of its status as an educational institution. And because T.C.U. is that kind of an institution, its exemption applies to the entire residuary estate, leaving no part of same taxable.

\* \* \* \* \* \*

"If you find that any part of the contract is objectionable or that anything should be added, please let me know and we will all get together and agree on the exact form of the contract to be executed.

"Sincerely yours,
"/s/ R. M. Rowland."

The contract submitted to appellees was in all respects the same contract as the one executed by the parties and in evidence in this case, except that in paragraph 3 of the final contract the words "their proportionate part of" was interlined just before the words "such taxes" so that the portion of the paragraph reading "then and in that event such taxes shall be paid by the heirs \* \* \*" after the change was made to read "then and in that event *their proportionate part of* such taxes shall be paid by the heirs." (Italics ours.) In connection with the contract Judge Rowland, an attorney for the University testified:

"Q. And from the general basis of the conversations had, Judge, the general propositions and basis of settlement was that the residuary estate was to be divided equally between the parties, that is correct, isn't it? A. Well, in a general way, yes. There was sort of a fifty-fifty division of the estate.

"Q. In other words, you thought half of a loot was better than none? A. Yes, I did.

"Q. You were representing T.C.U. at that time as their counsel? A. I was, as one of their attorneys.

\* \* \* \* \* \*

"Q. Who drew the paragraph of contract with reference to payment of taxes, Judge? A. I first drew the entire contract, and then before submitting it to counsel for the contestants, I took it up, of course, with Mr. Ed Brooks, who was one of the attorneys for T.C.U. in the case and was a specialist in tax law, and we were looking to him to take care mostly of the tax angles in the case.

"Q. He was representing T.C.U. in the matter? A. Yes, he was one of the attorneys for T.C.U. I took it up with him and he suggested that the paragraph or provision in the original draft made by me should be changed somewhat as to the matter of taxes, Federal estate taxes, and the state inheritance taxes. I said, 'all right, you redraw that page and make such provisions as you think should be made as to the matter of taxes, tax angles and settlement.' So, he did redraw, I think redrafted one page, and put in such provisions with regard to taxes as he thought were proper. I accepted that amendment to the original draft made by me, and then submitted it in that

form after he had made this change in those taxes. I submitted it then to counsel on the other side.

"Q. Now, the original contract as drawn and submitted by you provided that the heirs should pay all of the estate taxes, didn't it? A. The original draft made by me—

"Q. The one that was submitted. A. The one that part of it was redrawn by him, by Mr. Brooks, and then it was submitted to counsel for contestants, and it did provide for the heirs to pay estate taxes."

C. B. Long, an attorney for appellee heirs, testified concerning the interlineage as follows:

"Q. And you are the one that called Mr. Rowland and suggested to him this change 'their proportionate part of' and Mr. Rowland agreed to it? A. That's right. I called him and told him they wouldn't sign the contract like it was."

The facts and circumstances hereinabove set out surrounding the execution of the contract, in our opinion, support the proposition that it was intended that all Federal estate taxes should be paid by the executors out of the residuary estate and that the University, after receipt of the net residuary estate from the trustees should, within ten days, pay 50 per cent of such amount to appellee heirs. This was the effect of the proposition made by the heirs except that, contrary to the will, it was proposed that beneficiaries of special bequests be required to pay the taxes on the amount of such bequests. Although the attorneys for Texas Christian University testified that the proposition was accepted "in substance" the proposed contract of settlement presented to the heirs was materially at variance with the proposition insofar as taxes were concerned. The draft of the proposed contract presented to the heirs by Judge Rowland in addition to the provision that special bequests should be tax free except for inheritance taxes against special bequests to appellees, then provided in effect that although it was contemplated that there would be no Federal estate taxes on any part of the residuary estate, that "in the event any such taxes should be assessable against any part of the residuary estate" such taxes should be paid by the heirs. Attorneys for the heirs objected to this provision and required a change to the effect that they should pay only "their proportionate part of" such taxes.

The condition in paragraph 7 that the heirs' right to fifty per cent of the net residuary estate was subject to "proper adjustment" for taxes was meaningful in the contract as originally written because of the provision therein that appellees should eventually pay such taxes, and the amount thereof would, of course, be deducted from the heirs' one-half of the residuary estate. After interlineation in paragraph 3 of the words "their proportionate part" the provision in paragraph 7 for "proper adjustment" for taxes was stripped of the principal part, if not all of its meaning, because their proportionate part of the taxes was in the same proportion as their participation in the residuary estate. The contract, both before and after change of the provision that the heirs should pay "all" the estate tax to "their proportionate part," provided that the executors should pay the estate tax before paying any installment to Texas Christian University. As long as the proposed contract still contained the provision that the heirs were to bear the burden of all estate taxes, since the executors were required to pay them before making any payment to Texas Christian University, it was necessary to have the provision in the contract for an adjustment for taxes before Texas Christian University should pay over half of the amount received to the heirs. After the change, such provision had no meaning and it is evident that it was left in the contract through oversight. Appellant contends that if possible a construction should be adopted which gives effect to each and every word of the instrument in preference to one which would render any of the provisions of the contract meaningless. We agree with this statement of the law but feel that it is not controlling in this case. The meaning sought to be given the words

"their proportionate part of" by appellant would result in a strained construction. The words are much more reasonably susceptible of the interpretation given to them by the court than by appellant. As already indicated, we are of the opinion that the most plausible interpretation of the words "their proportionate part of" when considered in connection with the contract as a whole is that the responsibility of the heirs for Federal estate taxes was intended to be in proportion to their participation in the residuary estate, which is 50 per cent. Such words were interlined into the contract and we believe it was the intention of the parties that effect should be given to the meaning of the words used. This intention should prevail over the inconsistent although not conflicting language in paragraph 7 providing for an adjustment. The facts and circumstances in evidence clearly indicate that such was the intention of the parties. The intention of the parties, as plainly disclosed by the instrument viewed as a whole and in connection with surrounding facts and circumstances, should not be destroyed in order to give meaning to the provision for an adjustment.

■ The judgment provided that Texas Christian University must pay one-half of its receipts to Robert M. Barton and Joe K. Orndorff as trustees for the plaintiffs. Appellant urges that such action by the court was error because the contract provided that such payments should be made by depositing the money in the First National Bank of Gordon, Texas, to the joint credit of Chester Burgett, Charlie Burgett and Edna Duncan Rader. This point is well taken. The judgment of the court should be reformed so as to require appellant to deposit the moneys due to appellees to their credit in the First National Bank of Gordon, Texas, as provided by the contract.

It is, therefore, ordered that the judgment of the trial court be reformed so as to require appellants to deposit the amount of money due appellees to their credit in the First National Bank of Gordon, Texas, and as so reformed, the judgment is affirmed.