Stanley **BLACKBURN**, Appellant,

v.

W. H. **MANNING** et al., Appellees.

No. 6707.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 4, 1957.

Rehearing Denied Dec. 9, 1957.

Harris Lofthus, Amarillo, for appellant.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, C. A. Stein, Amarillo, of counsel, for appellees.

PITTS, Chief Justice.

This is a suit for breach of a rental contract involving the use of certain town lots, filed by appellant, Stanley Blackburn, against appellee, W. H. Manning, and five named alleged tenants of appellee Manning, but all of the relief sought was against appellee Manning, leaving the other named defendants as being no more than nominal parties, if even that. The case was tried to the court without a jury, as a result of which appellant was denied any recovery as against any of the defendants by judgment duly entered, from which judgment appellant perfected his appeal and here seeks recovery against appellee Manning only.

The suit was brought seeking a forfeiture of a written lease contract executed by the parties authorizing appellee Manning, for a valuable consideration, to occupy and use 10 described adjacent unimproved town lots located in Amarillo, Texas, and owned by appellant, for a period of nine years, beginning January 15, 1955 and expiring January 15, 1964. The terms of the lease authorized the occupancy and use of the said lots for "moving equipment storage, office, workshop and sleeping quarters, and not otherwise", and it further provided by its terms that "all property placed upon the premises, whether affixed to the soil or not, shall retain the character of personal property and belong to lessee, and shall be removed by lessee within a reasonable time after the termination hereof." The terms of the lease further provided that "This lease is a new lease, and is executed in place and stead of a previous lease covering the same premises demised herein, executed by Stanley Blackburn, Lessor, and W. H. Manning, Lessee, on the 15th day of January, 1954." The record reveals that the latter lease mentioned was previously executed by the said parties to this suit for a term of five years, beginning January 15, 1954 and expiring January 15, 1959, and that the terms contained the exact language previously herein quoted from the lease contract sued on here concerning the purpose for which the premises may be used and the personal character of improvements placed thereon.

The record reveals that appellant's father, as the predecessor in title to the town lots, had, by a 10-year contract beginning January 1, 1949, previously leased the same said town lots, except for five such lots not included in the subsequent leases, to appellee under the same material terms and provisions as those previously herein quoted and recited in the last two subsequent leases executed by the parties to this suit and that appellee had accordingly occupied

the premises continuously under the terms of the three mentioned leases since January 15, 1949. Both parties to this suit testified that the lease here sued on was executed by them in lieu of a former lease contract in settlement of a controversy existing between them caused by appellee using five adjacent town lots to the ones here involved, which lots were also owned by appellant. The record reveals that the said five lots had been previously included in the original lease contract executed by appellant's father in favor of appellee and appellee had been using them previously. But they had been excluded in the lease contract here involved. The material terms of the last lease contract, the same being the one here involved, are the same as the previous one executed between the parties to this suit except that it had extended the primary term for five years or to January 15, 1964.

Based upon such existing conditions appellant pleaded a mis-use of the last lease contract by appellee in that he had moved buildings upon the premises and was using such for a garage, filling station and an apartment house, each open for public use and to serve the public and that advertising signs had been placed on the premises and a part of such premises had been sub-leased, all allegedly having been done contrary to the provisions of the lease contract and in breach of its terms. Appellee pleaded a general denial; that the lease contract here involved was an extension of the former lease; that the same was executed as a compromise settlement of a previous controversy between the parties; that the usage then being made of the town lots was to continue; that the language used in the lease contract was ambiguous, and he likewise pleaded mutual mistake, waiver, ratification by appellant and estoppel as a bar to appellant's recovery, in any event.

There is competent evidence of probative force to the effect that whatever use appellee was making of the premises began during the lifetime of appellant's father, who, as the owner then of the premises and as lessor, assisted appellee as lessee in borrowing the money to place the improvements in question upon the very same town lots, that such was known to appellant and that the premises in question had since been openly and continuously used by appellee in the same manner as they were being used when appellant herein became owner of the lots by conveyance of his father and executed both leases previously mentioned; that appellant had been on the said premises at least on several occasions while such were being so used openly and consequently knew of such usage. Appellant testified in effect that he had been on the said premises and had seen the buildings thereon being used but he did not know they were being used openly for the service of the public. He further testified that he saw the advertising signs on the premises and had never complained about their usage and was not then complaining particularly about use of said signs. Pictures of the signs on the fronts of the buildings on the premises are in evidence introduced by appellant and we believe they show public use of the premises. One sign says in big letters on the front of a building: "Robert's Auto Repairs, Truck and Car, Brake Service, Engines Repaired," and another signs says "Flats Fixed." Appellant introduced other pictures of signs of like import. Appellee testified he had not at any time assigned or sub-leased any part of the premises in question to anyone else and that appellant nor anyone else had ever complained about the usage he was making of the premises.

The lease contract sued on here was executed by the parties on February 10, 1955 to begin January 15, 1955, thus beginning retroactively at a time when the foregoing described usage of the premises had long previously begun and the same continuously thereafter used. The lease contract was prepared on a printed form designed and adapted apparently for use in leasing improved city property and not for the leasing of unimproved city lots such as were here leased. The terms of

the printed form required appellee as lessee to care for the fixtures and keep the premises, including the plumbing and plate glass, in good repair and other surplusages that could not apply to leasehold responsibilities of unimproved lots such as were here leased. There were blanks left in the form for the use of inserting other terms if desired and all of the previous terms herein quoted were written into the blank spaces in the lease contract.

■ Appellant has challenged the trial court's judgment without seeking any findings of fact or conclusions of law from the trial court and no such were filed. But we must assume that the trial court's findings were all in support of its judgment and that it did not consider any improper evidence heard, if any such was introduced. Where no findings were filed by the trial court and none requested, it is the duty of this court to affirm the judgment appealed from if such can be sustained upon any reasonable theory supported by the evidence and authorized by law. Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706, 708 (writ refused); Strickland v. Humble Oil & Refining Co., Tex.Civ.App., 181 S.W.2d 901. In considering these matters, we are likewise required to construe the evidence in a light most favorable to the judgment rendered, disregarding all evidence adverse thereto and indulging every legitimate conclusion which tends to uphold the judgment. Truelove v. Truelove, Tex.Civ. App., 266 S.W.2d 491 (writ refused); Banks v. Collins, 152 Tex. 265, 257 S.W. 2d 97. It is elementary that in a case such as this the trial court is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony and may believe all, none or any part of the testimony of any witness.

■ Appellant first charges error because the trial court admitted "parol evidence to vary the terms of a lease," which is a written contract. However, he does not point out the particular parol evidence he is complaining about other than the two previous lease contracts executed by appellant's father to appellee and by appellant to appellee, both of which are written documents and not parol evidence. However, appellee pleaded the terms of the lease were ambiguous, which includes the language authorizing the usage of the improved town lots leased, which usage is the basic complaint made in this case. The language of the lease contract says the premises may be used or occupied by the appellee for "moving equipment storage, office, workshop and sleeping quarters." Such terms are not self-explanatory and are susceptible to more than one construction. There is nothing in the terms of the lease to show what kind of "moving equipment" may be stored on the premises nor whose "moving equipment" may be left there for storage. There is nothing in the terms of the lease to show what kind of "office", "workshop", or "sleeping quarters" the premises may be used for nor who may occupy such. Such terms are not self-explanatory and are susceptible to various constructions. Such office, workshop or sleeping quarters may either be limited and occupied only by lessee or such may be expansive and elaborate and occupied by others so long as the premises were not sub-leased and appellee testified they were never sub-leased. Appellant's interest was the bare lots without any improvements thereon. The lease contains no restrictions about who shall occupy the improvements placed thereon. It only provided that the lots shall not be sub-leased without the permission of the lessor. We find nothing in the lease to prohibit the lessee from using his buildings placed thereon to serve the public. But, in any event, the presence of the signs on the fronts of the buildings should have shown conclusively that the buildings were being used to serve the public and appellant testified he saw the signs on his several visits to the premises and made no complaint about them.

■ In our opinion the trial court was justified in concluding that some of the terms of the lease contract, and particularly those terms authorizing usage, are ambiguous and parol evidence was needed to determine the intention of the parties. Texas Christian University v. Burgett, Tex.Civ.App., 267 S.W.2d 439. Such ambiguity needed parol evidence only to explain the intention of the parties. The trial court heard evidence only to determine the intention of the parties and not to vary the terms of the contract. It is a well established rule that in case of ambiguity in a written instrument the intentions of the parties my be ascertained by parol evidence. Turner v. Montgomery, Tex.Com.App., 293 S.W. 815; Ellisor v. Kennedy, Tex.Civ.App., 128 S.W.2d 842; Gordon v. Pledger, Tex.Civ.App., 271 S.W.2d 344. The intention of the parties could best be determined by their acts and conduct as well as statements made by them. Under the evidence presented the trial court may have found that the terms of the lease contract had not been breached by appellee but, in any event, it was justified in finding and concluding that appellant's father, with the knowledge of appellant, helped appellee finance the placing of the improvements in question on the town lots in question for such usage under the terms of a similar lease contract; that such improvements were still there and the premises were being operated in the same manner as they were under the ownership of appellant's father during his lifetime and when appellant executed the same kind of a new lease on the property; that appellant had actual knowledge of such occupancy and use both before and after he became the owner of the town lots and before and after he executed the lease in question to appellee, which constituted ratification by appellant in any event of the usage being continuously made of the premises by appellee for several years, and for which reason appellant waived his right to complain and was estopped under the rules of law and equity from complaining about such usage by appellee. Sovereign Camp, Woodmen of the World v. Putnam, Tex.Civ.App., 206 S.W. 970 (writ refused); Holland v. Blanchard, Tex.Civ.App., 262 S.W. 97; Bankers Life & Loan Ass'n of Dallas v. Ashford, Tex.Civ.App., 139 S.W.2d 858.

Appellant charges error because appellee allegedly sub-leased a part of the premises without the consent of appellant and in violation of the terms of the lease contract. There is positive evidence that no part of the premises was ever assigned or sub-leased to anyone else at any time by appellee and it must be presumed that the trial court so found, for which reason appellant's charges thus made are overruled.

Appellant contends that the trial court's judgment is not supported by any admissible evidence, which contention is not supported by the record and is therefore overruled.

■ As his final point appellant asserts that:

"Appellant cannot be prejudiced by acceptance of monthly rental after notification of termination of lease contract, having given no indication of change of mind, and action not being based upon non-payment of rent."

Such is merely an abstract statement of a conclusion of law or a conclusion of fact or a mixed statement of both and is not an assignment of error. A point of error is an indispensable part of a brief and a mere abstraction or conclusion stated in lieu of a point of error in briefing is not acceptable when no alleged error of the trial court is shown therein. Jones v. Hortenstine, Tex.Civ.App., 291 S.W.2d 761, 763, and other authorities there cited.

For the reasons stated appellant's points of error are all overruled and the judgment of the trial court is affirmed.