**Jimmy L. GILES, Plaintiff,**

v.

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Defendant.**

Civ. A. No. M–88–132–CA.

United States District Court, E.D. Texas, Marshall Division.

May 15, 1989.

---

Doyle Curry, Marshall, Tex., for plaintiff.

Joseph W. Wolfe, Sherman, Tex., for defendant.

## OPINION

HALL, District Judge.

This is a personal injury suit brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* On April 6, 1989, the Court denied the defendant Railroad's Motion for Summary Judgment. The Railroad thereafter filed a Motion to Reconsider the denial, and plaintiff Giles filed a response to the Railroad's Motion to Reconsider. The Court held a hearing on the motions on April 24, 1989. At the conclusion of the hearing the Court ruled from the bench in favor of the Railroad.

This suit was originally filed in the 236th Judicial District Court of Tarrant County, Texas, and subsequently transferred by agreement to the 336th Judicial District Court of Grayson County, Texas. On March 28, 1988, before the Court in Grayson County, the lawyers announced that the case had settled and the following proceedings took place:

MR. FRIEDMAN [counsel for plaintiff]: Now comes the parties, in the Court's chambers, and make the announcement to the Court as follows: That the parties have amicably settled the cause of action Jimmy L. Giles versus Missouri–Kansas–Texas Railroad Company, Number 107,765, in the following terms.

The Defendant will pay the total sum of one hundred and twenty-five thousand dollars. Such sum is a gross amount of money, and to be deducted from that are railroad retirement benefits of approximately nine thousand, seven hundred dollars. The amount to be supplied at a later time, but not to exceed ten thousand dollars.

The net amount of the settlement, minus the railroad retirement benefits, which will be in turn sent back to the railroad retirement board, will be paid

one third on April 12, 1988; one third on May 12, 1988; and the remainder one third on June 12, 1988.

It is the agreement and stipulation of the parties that the Defendant will pay the chargeable court costs. The final term of the settlement is that Mr. Giles, as a part of this settlement, hereby tenders his resignation from the Missouri–Kansas–Texas Railroad Company, recognizing full well that he is not physically able to and under the advice of his doctor will not be physically able to return to such work in the foreseeable future.

*Mr. Giles, have I stated the agreement—*

MR. GILES: *Yes, sir.*

MR. FRIEDMAN:—*as far as you're concerned?*

MR. GILES: *Yes, sir.*

MR. FRIEDMAN: *And is that acceptable to you?*

MR. GILES: *Yes, it is.*

MR. FRIEDMAN: And you have conferred with me and with your wife. She is here present with us today, is she not?

MR. GILES: That's correct.

MR. FRIEDMAN: And relying upon my advice, you and your wife have decided that *you want to enter this and ask the Court to approve that settlement as I have just stated?*

MR. GILES: *That's correct.*

MR. WOLFE [counsel for defendant]: Judge, if I could just ask one or two questions.

THE COURT: Please go ahead, sir.

MR. WOLFE: Mr. Giles, as we normally ask in these situations: You don't have any questions, do you, sir, in regard to the terms of this settlement? Is there anything about it that is unclear to you, as far as the terms of the settlement?

MR. GILES: I understand.

MR. WOLFE: And, of course, you understand that this is in the nature of a final settlement, regardless of what may happen in the future in regard to your-

self. That is, if your condition should not improve or anything else should happen *after this date*, it would then be too late to come back in and reopen the matter and have any further action taken on it. Do you understand that?

MR. GILES: Yes, sir.

THE COURT: *And are you asking the Court to approve the settlement the way that it is entered into here?*

MR. GILES: *Yes, sir.*

MR. WOLFE: I believe that's all I have.

THE COURT: *All right. The Court will approve the settlement then.*

MR. WOLFE: Thank you, Your Honor.

(End of proceedings in Chambers.)

Giles later testified that his attorney told him he would likely receive no recovery if he did not accept the settlement offer. Some weeks after the hearing Giles spoke with several of his friends, who expressed the opinion that Giles had not received a fair settlement. One month after the hearing Giles decided to withdraw from the settlement. On August 16, 1988, the state court granted Giles' Motion for Nonsuit. The Certificate of Service indicates that the motion was mailed to the Railroad's attorney on the day the order of nonsuit was signed, confirming the Railroad's assertion that the case was dismissed without an opportunity for a response. Giles refiled the lawsuit in this Court concurrently with the entry of dismissal in the state court.

The Railroad asserts that the parties have settled their claims and asks that this lawsuit be dismissed. Giles asserts that judgment was never rendered in the state court but, on the contrary, settlement negotiations continued after the March hearing. Giles therefore argues that no settlement precludes his claims in this court. The Court is of the opinion that judgment was rendered in the state court and that relitigation of Giles' cause of action is barred by res judicata.[1]

---

1. The Railroad additionally argues that summary judgment is warranted by virtue of a release executed by Giles in October of 1985. The events giving rise to this lawsuit occurred in both September and November of 1985. The October release purports to settle for $2,805 all

■ Under Texas law, a party may revoke his consent to settle a case at any time before judgment is rendered. *Samples Exterminators v. Samples,* 640 S.W.2d 873, 874–75 (Tex.1982). A judgment is rendered whenever the judge officially announces his decision in open court, or files a memorandum with the clerk. *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 59 (Tex.1970). Entry of judgment is merely a ministerial act that furnishes enduring evidence of rendition. *Flores v. Onion,* 693 S.W.2d 756, 758 (Tex.App.—San Antonio 1985, no writ).

Texas cases leave little doubt that the court in Grayson County rendered judgment in this case on March 28, 1988. In a recent opinion from the Fourteenth District a divorce settlement agreement was read into the record in detail. The trial judge then stated and entered on the docket "Orders per the record and the decree" and ordered the parties to execute a decree. The Court of Appeals, after noting that the words "judgment is rendered accordingly" would plainly constitute a rendition, stated as follows:

> We can see no material difference between "judgment is rendered accordingly" and "Orders per the record and the decree". [The trial judge] clearly granted the divorce and the only reasonable interpretation of the remainder of his statement is that he ordered the decree to conform to the stipulated agreement which was of record and that the attorney for petitioner was ordered to prepare the decree accordingly.

*Wharton v. Gonzales,* 761 S.W.2d 72, 74 (Tex.App.—Houston [14th Dist.] 1988, no writ).

■ In the present case the settlement agreement was read into the record in detail, and the judge specifically asked Giles if he wished the Court to approve the settlement as it was presented. On receiving an affirmative reply the judge declared that the settlement was approved. Under such circumstances there is no material difference between "the Court will approve the settlement then" and "Orders per the record," as the judge's approval, with the assent of Giles, clearly related to the settlement agreement detailed minutes earlier.

In an opinion from the Dallas Court of Appeals, after a settlement was announced and the agreement read into the record, the judge stated "I will render judgment based on the agreements that I have read into the record." The Court of Appeals held that, although a written judgment was not entered until many months later, a binding judgment was rendered on the day the settlement was announced. *Milwee v. Milwee,* 757 S.W.2d 429, 430–31 (Tex.App.—Dallas 1988, no writ).

There is no material difference between the words "I will render judgment based on the agreements" and "the Court will approve the settlement." Texas law does not require specific words of rendition, but merely states that "rendition of judgment is the pronouncement by the court of its conclusions and decision upon the matter submitted to it for adjudication...." *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289, 292 (1953), *overruled on other grounds, Jackson v. Hernandez,* 155 Tex. 249, 285 S.W.2d 184, 191 (1955). Nor is any uncertainty raised by the use of the word "approve." Texas procedural rules [2] require formal "approval" of settlements

claims arising from the September incident, and Giles' counsel in the state proceeding stipulated on the record that Giles had released in full any claims arising from that incident. An amended petition was later filed in state court, omitting claims for the September incident. Giles' present counsel informed this Court that the September incident was not relevant to this case, with the exception that he would seek to set aside the release on grounds of fraud or mistake in the event that the Railroad seeks to attribute Giles' injuries to the September incident.

The September incident is therefore raised for a limited purpose, and by virtue of the Summary Judgment it will not bear on the resolution of this case. Accordingly, it is unnecessary to address the validity of the release, and no fact issues regarding the release impede entry of Summary Judgment.

2. "Although federal law governs substantive rights of the parties in F.E.L.A. cases, when such cases are filed in our state courts they are tried in accordance with our own applicable Rules of Civil Procedure." *Dutton v. Southern Pac. Trans.,* 576 S.W.2d 782, 783–84 (Tex.1978).

by the court only in a limited number of instances, notably class actions and cases involving minors. *See* Tex.R.Civ.P. 42(e), 44(2). The entire proceeding in chambers would therefore become meaningless if the word "approve" were construed to effect anything other than a rendition. It is additionally clear that the parties, as well as the court, recognized the nature of the proceeding in chambers; as part of the settlement Giles "hereby tenders his resignation," and understood that he could not reopen the matter "after this date."

Giles' counsel nevertheless argues that by using the words "will approve" the trial judge intended to approve the settlement at that time in the future when the settlement papers would be presented to him. The argument is without merit. First, nothing in the context of the judge's remarks indicates that he would withhold rendering judgment until settlement papers were presented. Second, in the *Milwee* case cited above, the words "I *will* render judgment" were held to effect a rendition at the time of utterance. *Milwee*, 757 S.W.2d at 430–31 (emphasis supplied). Such language may be contrasted with "judgment *to be* entered accordingly," which was held to indicate that future action toward rendition was necessary. *Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482, 484 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.) (emphasis supplied). Third, the word "will" as an auxiliary verb is used not only to indicate simple futurity, but may also indicate a requirement or a command. *See* The American Heritage Dictionary of the English Language 1465 (1979). Determination, promise, or command may be expressed by either "shall" or "will," and although the trial judge might have more correctly stated "the Court *shall* approve the settlement," *see* A Dictionary of Modern Legal Usage 502 (B. Garner ed. 1987), his intention to render judgment at the moment of speaking is no less clear for the error.

Giles also argues that the Railroad's actions after the settlement hearing indicate that settlement negotiations were continuing. Giles points to the fact that the Railroad forwarded to Giles' counsel a form of release that included terms not discussed by the parties, and the fact that the Railroad did not make the first payment by the appointed date. It is doubtful that any of the Railroad's actions could have affected the finality of the settlement once that settlement was incorporated into a judgment. A consent judgment is not invalidated by a subsequent failure to perform a condition on which the consent was based. *Akin v. Akin*, 417 S.W.2d 882, 885 (Tex.Civ.App.—Austin 1967, no writ). In any event, the Railroad's counsel has provided a sufficient explanation of the Railroad's actions, stating that payment was not made because the customary release had not been executed, and that he never received word from Giles' counsel that the release was objectionable. As the Third Circuit noted in a similar FELA case, "The tender of a release did not reopen the agreement or make its execution a condition to the settlement itself." *Good v. Pennsylvania R.R.*, 384 F.2d 989, 990 (3d Cir.1967). In addition, the record shows that the Railroad forwarded nearly $10,000 of the settlement figure to the Railroad Retirement Board to offset prior payments of benefits to Giles. It therefore appears that the Railroad was seeing the matter through before Giles sought to withdraw from the settlement.

This Court must give the same full faith and credit to Texas judicial proceedings as those proceedings would have by law or usage in the Texas courts. 28 U.S.C. § 1738. This Court must therefore give the judgment of the Grayson County court the same preclusive effect that it would have under Texas law. *Scott v. Fort Bend County*, 870 F.2d 164, 167 (5th Cir.1989). Under Texas law,

> [a] consent judgment has the same degree of finality and binding force as does one entered by the court at the conclusion of an adversary proceeding. [citations omitted] Ordinarily, a consent judgment cannot be changed, altered, or set aside without the consent of the parties unless it is properly made to appear that it was obtained by fraud, mutual mistake, or that consent was not given.

*Hill v. Hill,* 599 S.W.2d 691, 692 (Tex.Civ. App.—Austin 1980, no writ).

Before the Court is summary judgment evidence consisting of affidavits and deposition testimony of Giles, indicating his belief that the settlement was procured by fraud or mistake. Such facts have no bearing in the present proceeding. Generally, only lack of jurisdiction will make a judgment void, and a judgment obtained by fraud or mistake would be merely voidable. *See* 47 Tex.Jur.3d *Judgments* §§ 70, 71 (1986). A voidable judgment carries res judicata force, and may be corrected only by direct review. *Segrest v. Segrest,* 649 S.W.2d 610, 611–13 (Tex.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983).[3]

■ Under the doctrine of res judicata, a cause of action once finally determined between the parties on the merits, by a competent tribunal, and without appeal, cannot afterwards be litigated by new proceedings, either before the same or another tribunal. *Texas Water Rights Comm'n v. Crow Iron Works,* 582 S.W.2d 768, 771 (Tex.1979). There is no dispute that the present action involves the same claims and parties as the prior action, that the court in Grayson County had jurisdiction to hear the case, and that no appeal was taken from that court's judgment. It further appears that no discrepancy exists between the Order entered in August and the judgment rendered in March, 1988, and therefore no reason appears to doubt that the March judgment has become final. Accordingly, the Court concludes that res judicata bars relitigation of Giles' claims.

For the reasons set forth above, the Court is of the opinion that the Railroad's Motion to Reconsider should be granted, that the Order of April 6, 1989 be withdrawn, and that the Railroad's Motion for Summary Judgment be granted.

---

**3.** There exists authority for the proposition that, under some circumstances, a party may successfully defend against a claim of res judicata if the opposing party in the prior proceeding engaged in fraud or concealment. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1227–28 (7th Cir.1984). Although the *Bell* decision rests on a peculiar feature of Wisconsin law, this Court notes for the sake of completeness that none of the summary judgment proof raises a fact issue as to fraud or mistake. None of the evidence, outside of a bald statement of opinion by Giles, raises the issue of fraud. The essence of the claim of mistake is the representation of Giles' counsel that the case was worth $440,000, and the later representation that if Giles did not accept $125,000 he would likely receive no recovery. Far from showing that the "mistake" was mutual, Giles has not shown that the representations were erroneous, or that his assent was based on a mistake of any kind.