**S & L RESTAURANT CORPORATION d/b/a Steak & Ale Restaurant, Appellant,**

**v.**

**Annie Marie LEAL, Appellee.**

**No. 04–91–00551–CV.**

Court of Appeals of Texas, San Antonio.

March 14, 1994.

Dissenting Opinion of Justice Reeves March 25, 1994.

Rehearing Denied July 5, 1994.

Opinions on Denial of En Banc Consideration of Rehearing Aug. 19, 1994.

---

Penelope E. Nicholson, Marie R. Yeates, Jason J. Kuller, Stephanie K. Crain, Vinson & Elkins, L.L.P., Houston, Lewin Plunkett, Kerby Johnson, Plunkett, Gibson & Allen, Inc., San Antonio, for appellant.

Sean F. O'Neill, O'Neill & Balega, P.C., Pat Maloney, Sr., Law Offices of Pat Maloney, P.C., Mike Maloney, Maloney & Maloney, P.C., Charles A. Nicholson, Law Offices of Pat Maloney, P.C., San Antonio, Christa Brown, Austin, for appellee.

Before CHAPA, C.J., and GARCIA and BLAIR REEVES,[1] JJ.

## ON APPELLANT'S MOTION FOR REHEARING

[Filed March 14, 1994]

CHAPA, Chief Justice.

Appellant's motion for rehearing is granted. Our opinion dated January 12, 1994 is withdrawn and the following is substituted.

This is a personal injury lawsuit. Annie Marie Leal, appellee, filed suit against S & A Restaurant Corporation d/b/a Steak and Ale Restaurant (Steak & Ale), appellant, claiming serious injuries from an accident at Steak & Ale. After two days of a jury trial, the parties reached a settlement agreement and entered it of record in an out of court hear-

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1988).

ing.[2] One month later, before the judgment was entered by the trial judge, appellant attempted to withdraw its consent to the agreement. Claiming newly found evidence, appellant filed a motion for new trial after the judgment was entered.

The dispositive issues before this court are:

1) whether the trial judge rendered judgment at the time of the out of court settlement hearing on May 14, 1992; and,

2) whether the trial court committed error in failing to hear the alleged newly discovered evidence at appellant's motion for new trial hearing. TEX.R.APP.P. 90.

This suit arose as a result of an alleged accident that occurred in the appellant restaurant and left appellee seriously injured. Apparently satisfied with appellee's deposition, appellant never requested a medical examination of appellee.[3] According to the record, discovery abuses resulted in sanctions eliminating six of appellant's fact witnesses and its only expert witness.[4] Under these circumstances, both parties announced ready for trial, a jury was picked, opening statements were made, and testimony was taken. After appellant was rigorously and extensively examined by attorneys for both sides, both parties announced to the court that a settlement had been reached and an out of court hearing was requested. The out of court hearing took place on May 14, 1992 and the following took place prior to the court approving the settlement:

[PLAINTIFF ATTORNEY]: Judge, I think it's in her best interests. May I go ahead and dictate it?

THE COURT: Yes. We need to go on the record.

[PLAINTIFF ATTORNEY]: And I would say to you, just listen to this. So that we have now asked the Court to approve a settlement in the total sum of $2 million.

Before doing that, however, and we need to know that you understand it, that you want it settled, that you approve of it, and that you understand that forever concludes your claim against Steak and Ale.

Do you understand all of that?

MS. LEAL: Yes, sir.

[PLAINTIFF ATTORNEY]: And do you ask the Judge and want the Judge to approve the conclusion and settlement? [emphasis added].

MS. LEAL: Yes, sir.

THE COURT: You realize that once this Judgment is signed and I approve it, everything else, it's full, final and complete? You can't come back later and say, "Well, I made a mistake," or "We should have gone for more"?

Whatever? Do you understand?

MS. LEAL: Yes, I do.

THE COURT: Are the court costs going to be paid by Defendants?

[PLAINTIFF ATTORNEY]: Yes.

[DEFENSE ATTORNEY]: Normally we pay for the court costs. Yes, we'll agree to pay the costs.

THE COURT: You realize now, and you are sufficiently aware of the facts now, and there isn't any question about your understanding the total settlement is $2 million? Do you understand that?

MS. LEAL: Yes, sir. I understand that. Mike and I—

THE COURT: And you want me to approve the settlement and sign the Judgment?

MS. LEAL: Yes, sir.

[PLAINTIFF ATTORNEY]: And you understand that once you settle the claim you

---

**2. RULE 11. AGREEMENTS TO BE IN WRITING**

Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

3. Since there is no point of error before this court in this regard, it must be assumed that appellant intentionally failed to request an examination for its own reasons.

4. There is no point of error before this court pertaining to the sanction imposed by the court, and we must therefore presume that the court did not err in imposing the sanctions.

will be responsible for paying all of your medical bills?

THE COURT: And the attorneys' fees come out of that. Do you understand?

MS. LEAL: Yes, sir.

THE COURT: I'll approve the settlement.

The jury was apparently dismissed thereafter.

A month later and prior to the entering of the written judgment, appellant attempted to withdraw its consent to the settlement based on alleged newly discovered evidence in the form of a videotape allegedly depicting appellee wearing high heels and walking without apparent problems.

At a hearing to enter judgment on June 19, 1992, the trial court entered judgment over objections from the appellant. Appellant argued for a continuance contending that judgment had not yet been rendered and that it was entitled to further time to prepare. On the other hand, appellee argued that the judgment had been rendered on May 14, 1992 and that the ministerial act of entering the judgment therefore could take place at any time without any particularly set notice. *See Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289, 292 (1953), *overruled in part on other grounds, Jackson v. Hernandez,* 155 Tex. 249, 285 S.W.2d 184, 191 (1955); *State v. Macias,* 791 S.W.2d 325, 328–29 (Tex.App.— San Antonio 1990, pet. ref'd). Apparently agreeing with the appellee, the trial court entered judgment making the implied finding that he had *rendered* the judgment on May 14, 1992 and was now merely *entering* the judgment, stating, "What is there to respond to, my signing of a Final Judgment?"

At the motion for new trial hearing on July 25, 1992, the trial court refused to hear the alleged newly discovered evidence, stating, "Well, I approved the settlement. I also *rendered* Judgment," in reference to the May 14, 1992 settlement hearing (emphasis added). Thus, the trial judge also made a specific finding that judgment was in fact *rendered* on May 14, 1992.

Therefore, the critical issue before this court is whether the trial court *rendered* judgment on May 14, 1992 by applying the appropriate standard of review if the point was properly preserved and assigned.

In *Comet Aluminum Co. v. Dibrell,* the Texas Supreme Court defined "rendition" by stating:

> In *Coleman v. Zapp,* 105 Tex. 491, 151 S.W. 1040, at 1041 (1912), we stated that a judgment's "rendition is the judicial act which the court settles and declares the decision of the law upon *the matters at issue.*" [Footnote omitted.] And in *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289, at 292 (1953), we quoted Freeman on Judgments as stating that a judgment is " 'rendered' when the decision is officially announced either orally in open court *or by memorandum filed with the clerk.*" [Footnote omitted.] We then quoted with approval from *Appeal of Bulkeley,* 76 Conn. 454, 57 A. 112, 113, (1904) as follows:
>
> > "A judgment is in fact rendered whenever the trial judge officially announces his decision in open court, or out of court signifies to the clerk, in his official capacity and for his official guidance— whether orally or by written memorandum—the sentence of the law pronounced by him in any cause."

*Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58–59 (Tex.1970).

In *Escobar v. Escobar,* after disapproving this appellate court substituting its judgment for that of the trial court, the Texas Supreme Court clearly established the standard for appellate review when dealing with the issue of rendition:

> The court of appeals correctly states that the decision whether an error in a judgment is judicial or clerical is a question of law. *Finlay v. Jones,* 435 S.W.2d 136 (Tex.1968). However, whether the court pronounced judgment orally and the terms of the pronouncement are questions of fact. *Wood v. Paulus,* 524 S.W.2d 749, 755 (Tex.App.—Corpus Christi 1975, writ ref'd n.r.e.); Reavley and Orr, *Trial Court's Power to Amend Its Judgments,* 25 Baylor L.Rev. 191, 203 (1973). The judicial or clerical question becomes a question of law *only after the trial court factually determines whether it previously*

*rendered judgment and the judgment's contents.*

*Appellate courts may only review for no evidence and factual insufficiency of the evidence the trial court's factual determinations on whether a judgment has been rendered.* The court of appeals erred by substituting its judgment for the trial court's determination that on December 21, 1978, the trial court rendered judgment on tract 38 at 265.42 acres. [Emphasis added.] [5]

*Escobar v. Escobar,* 711 S.W.2d 230, 232 (Tex.1986). Therefore the only standards of review this court can apply regarding the issue of rendition are factual and legal sufficiency of the evidence, if points of error are properly preserved and assigned with respect to these issues.

■■■ It has long been the law that if no findings of fact and conclusions of law are filed or requested in a nonjury trial, it is presumed that the trial court made all necessary findings to support the judgment. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). Unless the trial court's findings are challenged by a point of error on appeal, they are binding upon the appellate court. *Wade v. Anderson,* 602 S.W.2d 347, 349 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.) (citing *Zelios v. City of Dallas,* 568 S.W.2d 173 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.)).

■■■ "The trial judge, as the trier of fact, may draw reasonable inferences from the evidence, and his findings of fact may not be disregarded on appeal if the record contains some evidence of probative value from which these inferences may be drawn, or unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong." *IFG Leasing Co. v. Ellis,* 748 S.W.2d 564, 565–566 (Tex.App.—Houston [1st Dist.] 1988, no writ) (citing *Nicholas v. Crocker,* 687 S.W.2d 365, 367 (Tex.App.— Tyler 1984, writ ref'd n.r.e.)); *Valencia v. Garza,* 765 S.W.2d 893, 896 (Tex.App.—San Antonio 1989, no writ) (citing *Corporate Per-*

*sonnel Consultants v. Wynn Oil Co.,* 543 S.W.2d 746, 748 (Tex.Civ.App.—Texarkana 1976, no writ)). Unchallenged findings occupy the same position and are entitled to the same weight as the verdict of a jury. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986).

The Texas Supreme Court has also held that:

> In determining whether the trial court's findings are supported by any evidence of probative value, we will give credence only to the evidence favorable to the findings and will disregard all evidence to the contrary. The findings of fact and conclusions of law will be construed together; and if the findings of fact are susceptible of different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it.

*Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299, 301 (Tex.1963).

Since no findings of fact or conclusions of law were requested or filed in the case before us, it must be presumed that the trial court made all necessary findings to support the judgment. *Roberson,* 768 S.W.2d at 281. This record further indicated that the trial judge made an expressed finding on July 25, 1992 that he had rendered judgment on May 14, 1992. Since the appellant has not challenged any of the implied or expressed findings on appeal, they should be binding on this court and must be construed in harmony with and support of the judgment. *Brown,* 369 S.W.2d at 301; *Wade,* 602 S.W.2d at 349.

■■■ "A point of error is an indispensable part of a brief and a mere abstraction or conclusion stated in lieu of a point of error in briefing is not acceptable when no alleged error of the trial court is shown therein." *Blackburn v. Manning,* 307 S.W.2d 347, 351 (Tex.Civ.App.—Amarillo 1957, writ dism'd w.o.j.); *see also Smith v. Valdez,* 764 S.W.2d 26, 27 (Tex.App.—San Antonio 1989, writ denied). An appellant must also "present in his brief a discussion of facts or authorities relied upon to maintain his so-called points of

---

5. Implicit in the supreme court opinion is that the legal and factual sufficiency points of error

were properly preserved and properly assigned.

error." *Smith,* 764 S.W.2d at 27. Moreover, an appellate court is not authorized to reverse the judgment of the trial court in the absence of a properly assigned point of error. *Prudential Ins. Co. of America v. J.R. Franclen, Inc.,* 710 S.W.2d 568, 569 (Tex.1986); *Gulf Consolidated Int'l, Inc. v. Murphy,* 658 S.W.2d 565, 566 (Tex.1983).

■ It should be further noted that an issue may not be raised for the first time on appeal that was not previously made known to the trial court below. *Guzman v. Solis,* 748 S.W.2d 108, 111 (Tex.App.—San Antonio 1988, writ denied). The record here reflects that appellant failed to present either the factual or legal sufficiency argument in any motion before the trial court, including its motion for new trial. *See Aero Energy, Inc. v. Circle C Drilling Co.,* 699 S.W.2d 821, 822–23 (Tex.1985); TEX.R.CIV.P. 324(b)(2).

Appellant's brief further fails to present a clear point of error on either legal or factual sufficiency and fails to present a "discussion of the facts and the authorities relied" upon to maintain such points. TEX.R.APP.P. 74(f); *Smith,* 764 S.W.2d at 27. In fact, nowhere in appellant's briefs are the time-honored, repeatedly cited definitions of legal or factual sufficiency standards of review found. Consequently, nowhere in appellee's reply briefs is there a response to either a legal or factual sufficiency argument.

■ On appeal, aside from constitutional challenges regarding the motion for new trial hearing, appellants presented points of error contending that the court erred as a matter of law in rendering the judgment at the June 19, 1992 hearing to enter judgment after consent was withdrawn; that the rendered judgment materially differed from the settlement agreement in that "On May 14 Steak & Ale Understood That It Was Agreeing to Pay $2 Million in Exchange for a Take–Nothing Judgment"; that mere approval of a settlement agreement at the May 14, 1992 hearing does not constitute rendition of a judgment; and that appellee should not be permitted to hide her misrepresentations behind a claim of ambiguity in her condition.

Texas Rule of Appellate Procedure 74(d) provides in relevant part:

A point [or error] is sufficient if it directs the attention of the appellate court to the error about which complaint is made. In civil cases, complaints that the *evidence is legally or factually insufficient* to support a particular issue or finding, and challenges directed against any conclusion of law of the trial court based upon such issues or findings, may be combined under a single point of error raising both contentions if the record references and the argument under the point sufficiently direct the court's attention to the nature of the complaint made regarding each such issue or finding or legal conclusion based thereon. [Emphasis added.]

Appellant nevertheless suggests that his brief should be liberally construed to raise the legal and factual sufficiency points and erroneously relies on *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986), as authority.

In its point of error, appellant here complains "The so-called 'Agreed Judgment' is void and must be vacated because it contradicts the parties' settlement agreement and was rendered without Steak & Ale's consent."

In *Pool,* the point of error in question stated:

The trial court erred in entering judgment for the plaintiffs, because the jury's finding, in answer to Special Issue No. 6, that Ronnie Pool was not at all negligent in speeding, having a medically tested blood-alcohol level of .119, and failing to wear his seatbelt while driving under those conditions after midnight *is so against the great weight and preponderance of the evidence as to be manifestly unjust.* [Emphasis added].

*Pool,* 715 S.W.2d at 632.

The supreme court then concluded that:

It is obvious from the discussion under point of error 11, *as well as the wording of the point,* that Ford Motor Company intended it to be a complaint of factual insufficiency. Thus, we remand to the court of appeals for it to determine, pursuant to the correct standard, whether the jury's negative answers as to Pool's alleged speed and intoxication were *against the great weight*

*and preponderance of the evidence.* [Emphasis added].

*Id.* at 633.

■ The distinctions between the point of error before this court and that in *Pool* are clearly obvious. Where the appellant in *Pool* clearly notified the appellee that he was complaining about factual sufficiency using the factual sufficiency language "against the great weight and preponderance of the evidence," the appellant before this court made no such attempt. The whole purpose for a point of error is obviously to notify not only the court, but the appellee of what the appellant is specifically complaining of in order to give the appellee a fair opportunity to respond and notify the court of what appellate standards to apply. Thus, where the appellee and the court are not given a fair notice, it is improper to reverse on such an obscure basis. *See Prudential Ins. Co.,* 710 S.W.2d at 569; *Gulf Consolidated Int'l, Inc.,* 658 S.W.2d at 566.

In a recent opinion, this court stated that an appellant complaining "that the trial court erred in rendering judgment against him because there was no breach of contract between him and [the appellee]" was a "no evidence" point. *Box v. Flynn,* 870 S.W.2d 585, slip op. at 15 (Tex.App.—San Antonio 1993, n.w.h.). Therefore, even if the foregoing discussion on proper appeal of findings of fact and properly assigned points of error is disregarded, all the members of the panel, including the dissent, agree that only a legal sufficiency argument can be considered under the circumstances of this appeal upon the most liberal construction possible of appellant's brief. *Pool,* 715 S.W.2d at 632.

■ In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar,* 395 S.W.2d 821, 824 (Tex. 1965).

Relief to the appellant is still inappropriate under the facts of this case, upon a proper application of the legal sufficiency standard of review.

In *Escobar,* the critical issue was whether judgment was rendered by one judge who noted on December 21, 1978 that "tract 34 and 38 [were] awarded as per the Trimble map" on the docket sheet or by a subsequent written judgment which specifically set out that lot 38 contained 315.42 acres of land. According to the record, one presiding judge on December 21, 1978 entered the following on the docket: "tracts 34 and 38 awarded as per the Trimble Map" when the Trimble Map showed that lot 38 contained 265.42 acres of land. A final written judgment was entered at a later date showing lot 38 containing 315.42 acres of land. A different trial judge later granted a nunc pro tunc judgment correcting the acreage, concluding thereby that rendition as to lot 38 had taken place on December 21, 1978 by merely looking at the docket entry. Without following any particular standard of review, this court erroneously substituted its judgment for that of the trial judge, holding that rendition had not taken place on December 21, 1978 but rather on the later date when the written judgment was entered. *Escobar v. Escobar,* 699 S.W.2d 256, 258 (Tex.App.—San Antonio 1985). The Texas Supreme Court reversed stating that this court had no authority to substitute its judgment for that of the trial court, that the issue of when a judgment was rendered and the terms thereof was a fact issue to be resolved by the trial judge, and that this court could only review the issue on legal and factual sufficiency points of error.[6] *Escobar,* 711 S.W.2d at 232. The court also concluded that the docket entry alone was some evidence of rendition, stating:

> We find some evidence to support the trial court's finding. The judge viewed the docket entry of December 21, 1978 which stated: "tracts 34 and 38 awarded as per Trimble map." Docket entries are some evidence of a rendered judgment and its contents. *Port Huron Engine & Thrasher*

6. Implicit in the supreme court's opinion is that the legal and factual sufficiency points of error

were properly preserved and properly assigned.

*Co. v. McGregor,* 103 Tex. 529, 131 S.W. 398 (1910).

*Escobar,* 711 S.W.2d at 232.

In *Samples Exterminators v. Samples,* 640 S.W.2d 873 (Tex.1982), the Texas Supreme Court held that judgment was rendered after a settlement agreement similar to the one before this court was dictated into the record and wherein the trial court stated:

It appearing to the Court that all of you did agree in open court to this settlement, the Court approves the settlement made in open court and orders all parties to sign any and all papers necessary to carry out this agreement that was made and dictated into the record.

*Id.* at 874.

In *Galerie D'Tile, Inc. v. Shinn,* 792 S.W.2d 792 (Tex.App.—Houston [14th Dist.] 1990, no writ), the court held that when the trial judge intends to render judgment is critical to the determination of when rendition actually takes place. *Id.* at 794; *see also Comet Aluminum Co. v. Dibrell,* 450 S.W.2d at 58–59; *Coleman v. Zapp,* 105 Tex. 491, 151 S.W. 1040, 1041 (1912). The court also concluded that even though the trial judge never approved the dictated settlement agreement, rendition nevertheless had taken place when the trial court stated the following at the end of an agreed settlement hearing similar to the one before this court: "Signed and entered this, the 19th day of October, 1987." *Galerie D'Tile, Inc.,* 792 S.W.2d at 794.

In the case before us the trial judge made it clear that his intent was to render judgment on May 14, 1992, making unchallenged implied and express findings of rendition on that date. The settlement agreement hearing took place only after the parties had announced ready for trial, had picked a jury, had made opening statements, and had presented testimony including the vigorous examination of the claimant by both parties. The settlement hearing on May 14, 1992

clearly established that the settlement was for the amount of $2,000,000; that appellee, and consequently everyone at the hearing, clearly understood that the case was all over (*"full, final, and complete"*) and that thereafter appellee could not come back seeking further recovery; that the medical bills and attorney fees would be paid out of the settlement amount; that appellee was asking "the Judge and want[ed] the Judge to approve the *conclusion and settlement*" (emphasis added); that appellant agreed to pay all the costs of court; and that the trial judge approved the settlement.

■ Moreover, the jury was dismissed after the out of court settlement agreement hearing. Once a jury is selected and evidence is taken, a jury is dismissed upon 1) a motion for directed verdict under Texas Rule of Civil Procedure 268; 2) a motion for nonsuit under Texas Rule of Civil Procedure 162; 3) a motion for mistrial; 4) a motion under Texas Rule of Civil Procedure 289 for juror illness, accident or calamity, or a hung jury; and 5) disposition of the case. Here, clearly the jury was dismissed only because the case was disposed of. We note that on appeal, appellant concedes that "On May 14 Steak & Ale Understood That It Was Agreeing to Pay $2 Million in Exchange for a Take–Nothing Judgment."[7] Thus, the record indicates that on May 14, 1992, in addition to the trial judge, the appellee, and counsel for both sides, appellant also intended final disposition of the case by way of the settlement agreement.

When we consider that the Texas Supreme Court concluded in *Escobar* that a judge merely looking at a docket entry of another judge was some evidence of a rendition, this court cannot correctly hold that all the foregoing is no evidence of a rendition on May 14, 1992. *Escobar,* 711 S.W.2d at 232.

To hold otherwise under these circumstances would not only bring havoc upon the finality and sanctity of judgments, but would

---

7. However, this record reflects that 1) appellant failed to notify the trial court at the hearing on May 14 that the settlement agreement included a take nothing judgment, and 2) at no time has appellant offered to pay the $2,000,000 and move the trial judge to modify the judgment to reflect a

take nothing judgment. Moreover, a take nothing judgment in favor of appellant and against appellee with nothing in return would most certainly not be in compliance with the settlement agreement that even appellant concedes it agreed to.

send a disturbing message to plaintiffs and defendants alike who find themselves unprepared, weakened by sanctions, or faced with a selected jury not to their liking. The extent of the havoc is more evident when considered in the reverse.

Assuming that appellee, under these identical circumstances, would have been in the position of the appellant demanding that this court find no evidence of rendition on May 14, 1992. This court would be forced to readily conclude as it does now, that there is evidence of rendition on that date, when faced with all the circumstances of this case and a statement of facts wherein she was specifically told in no uncertain terms that it was all over as far as she was concerned, with language such as:

[W]e need to know that you understand it, that you want it settled, that you approve of it, and that *you understand that forever concludes your claim against Steak and Ale.* Do you understand all of that?

And do you ask the Judge and want the Judge *to approve the conclusion and settlement* ?

*You can't come back later and say, "Well, I made a mistake," or "We should have gone for more"?* Whatever? Do you understand?

You realize now, and you are sufficiently aware of the facts now, and there isn't any question about your *understanding the total settlement is $2 million* ? Do you understand that?

And you want me to approve the settlement and sign the judgment?

And you understand that *once you settle the claim you will be responsible for paying all of their medical bills* ?

And the attorneys' fees come out of that. Do you understand?

Certainly, no reasonable, prudent, or serious argument could be made that there can be rendition as to one party but not as to the other. This obviously unjust contradiction did not escape the trial judge who noted during the hearing to enter judgment while addressing counsel for appellant, "[W]hat if the lady had gotten worse? Would you have paid more?"

The appellant misplaces reliance upon cases that are distinguishable. *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex.1976) (holding that there was no rendition since the trial judge clearly stated he was taking the motion under advisement to dispose of it in the future); *Formby's KOA v. BHP Water Supply Corp.*, 730 S.W.2d 428, 430 (Tex.App.—Dallas 1987, no writ) (holding that there was no rendition where the record clearly reflected that the agreement was "tentative" and that the instruments would be later drawn to set out in particular those aspects that need "maybe some refinement"); *Intercostal Warehouse Corp. v. Clear Lake Nat'l Bank*, 795 S.W.2d 294, 295–96 (Tex.App.—Houston [14th Dist.] 1990, writ dism'd w.o.j.) (holding that there was no rendition where the record reflected that the judgment and other document were to be prepared and presented to the court "within 30 days" which would include what the judge described as "various pending things out there"); *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 58 (Tex.1970) (holding that rendition as to damages and attorneys fees occurred when the court made an oral pronouncement only as to damages and attorney fees and that rendition as to pre-judgment interest occurred when the court later made a written pronouncement for the first time as to pre-judgment interest).

Thus, even ignoring whether appellant has properly challenged the trial court's findings of fact and properly preserved and assigned a legal sufficiency point as to rendition, the point is nevertheless rejected upon considering only the evidence favorable to the decision of the trier of fact and disregarding all evidence and inferences to the contrary. *Davis*, 752 S.W.2d at 522; *Garza*, 395 S.W.2d at 824.

█ Appellant also complains that the trial court erred in refusing to hear fact evidence at the motion for new trial hearing. This allegation is supported by the record.

The Texas Supreme Court has repeatedly held that the trial court must at least hear the newly discovered evidence on which the trial court's decision must ultimately be based. *Jackson v. Van Winkle*, 660 S.W.2d

807, 809 (Tex.1983); *Hensley v. Salinas*, 583 S.W.2d 617, 618 (Tex.1979). In *Hensley*, the supreme court stated,

> Necessarily, when a motion presents a question of fact upon which evidence must be heard, the trial court is obligated to hear such evidence when the Motion for New Trial alleges facts, which if true, would entitle the movant to a new trial and when a hearing for such purpose is properly requested.

*Id.* at 618. Besides establishing that the trial court is "obligated" to hear the new evidence before ruling on the motion for new trial, the supreme court in 1979 said,

> In passing on a motion for new trial on the ground of newly discovered evidence, the court will take into consideration the weight and the importance of the new evidence and its bearing in connection with the evidence received at trial.

*Jackson*, 660 S.W.2d at 809.

It is clear that the standard for the reviewing the granting or denial of a motion for new trial allows the trial court broad discretion. *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex. 1988). The trial court, however, must at least hear the new evidence. *Jackson*, 660 S.W.2d at 809; *Hensley*, 583 S.W.2d at 618; *Cecil v. Smith*, 804 S.W.2d 509, 511 n. 5 (Tex.1991) (trial court obligated to hear evidence after filing requirements of TEX. R.CIV.P. 329b were met).

Because appellant was not allowed the first step of having the trial judge hear the newly discovered evidence, appellant was not afforded the opportunity to address the next step, the standards required for the granting of a new trial. *Fish v. Bannister*, 759 S.W.2d 714, 722 (Tex.App.—San Antonio 1988, no writ). In *Fish*, we said to obtain a new trial based on newly discovered evidence, the movant must establish the following:

1. Admissible, competent evidence must be introduced on the hearing of the motion for new trial showing the existence of the newly discovered evidence relied upon;

2. Moving party must show that neither the party nor attorney had any notice of the existence of such evidence prior to the time of trial;

3. Moving party must show that due diligence had been used to procure the evidence prior to trial;

4. Moving party must show that the evidence is not merely cumulative to that already given and does not end only to impeach the testimony of the adversaries;

5. Moving party must show that the evidence would probably produce a different result if a new trial were granted.

*Bannister*, 759 S.W.2d at 722.

Appellee contends upon rehearing that the trial judge was not required to hear the alleged newly discover evidence because the record supports an implied finding by the trial court of lack of due diligence on the part of the appellant. However, we hold that under the holdings set out above, the determinations of fact to be made by the trial judge under *Bannister* cannot take place until the trial judge has heard the alleged newly discovered evidence. Further, this court must always remain cognizant that it is not authorized to substitute its judgment for that of the trial court. *Escobar*, 711 S.W.2d at 232.

Therefore, since the trial judge refused to hear the newly discovered evidence, we sustain appellant's point of error "and remand the case to the trial court with instructions to conduct a hearing on [appellant's] Motion for New Trial." *Hensley*, 583 S.W.2d at 619. Having concluded that judgment was rendered on May 14, 1992 and that the cause must be abated for a hearing on appellant's motion for new trial, we see no necessity in addressing the remaining issues.

[Filed March 25, 1994]

Before CHAPA, C.J., and GARCIA[1] and BLAIR REEVES, JJ.

---

1. Justice Orlando Garcia not participating in dissenting opinion.

BLAIR REEVES, Justice[2], dissenting.

I agree with the majority that the trial court should have considered the evidence Steak & Ale tendered at the motion for new trial. I would hold the agreed judgment void as a matter of law, however, because Steak & Ale revoked the settlement agreement before judgment was rendered. Additionally, the judgment should not be enforced because it does not comply strictly with the agreement.

## FACTS

During the trial on the merits, Annie Marie Leal sat in a wheelchair and acted as if she was in constant and intense pain. Leal testified that as a result of her alleged injuries caused by the negligent acts of a Steak & Ale employee: (1) she cannot get out of her wheelchair without assistance; (2) she suffers constant, excruciating pain; (3) she cannot walk without the use of a walker or personal assistance; (4) she cannot do her cooking, house cleaning, and other household chores; and (5) her dressing, bathing, and bathroom needs require her to use special equipment such as a raiser on the commode seat and tub bench for bathing.

Ms. Leal's doctor, Dr. Stephen Early, testified that at "this point in time" (a week before trial) she was a partial paraplegic and, in his opinion, would not improve, with her condition deteriorating with time. Dr. Early estimated her future medical care would cost $2.2 million.

Dr. Apex Willingham, Medical Director at Warm Springs Rehabilitation Center, testified that Ms. Leal suffers from chronic pain that would require an ongoing rehabilitation program and, in time, would require attendant care. The doctor testified that Leal could not dress herself except while lying down or using adaptive equipment. Dr. Willingham further testified that Ms. Leal needed a wheelchair when she came for treatment, and that her condition had deteriorated since her release from Warm Springs Rehabilitation Center.

The testimony of Ms. Leal and her medical witnesses convinced Steak and Ale to settle.

One month later, a member of the legal staff of the firm representing Steak & Ale happened to see Ms. Leal walking normally, without apparent difficulty, in three-inch high heels. Steak & Ale hired a private investigator and videotaped Ms. Leal's activities. These tapes show Ms. Leal walking normally without apparent difficulty, driving an unmodified automobile, shopping, and carrying a wash basket full of clothes. Not once during the five-day surveillance did any of the private investigators see Ms. Leal walk with the assistance of a cane, walker, or wheelchair. In fact, the only time Ms. Leal was observed limping was when she entered or left the Warm Springs Rehabilitation Center.

The following dialogue occurred at the settlement hearing on May 14, 1991:

Mr. MALONEY: And I would say to you, just listen to this. So that we have now asked the Court to approve a settlement in the total sum of $2. million. . . .

THE COURT: You realize that once *this judgment is signed and I approve it,* everything else, it's full, final and complete? . . . *I'll approve the settlement.*

MR. PLUNKETT: There is a confidentiality agreement among the parties, the attorneys. None of us will disclose it.

THE COURT: And I am not going to disclose it.

MR. MALONEY: And I think there should be. And confidentiality means we don't discuss the sums that are terminated, and I think that's in your best welfare, for a lot of reasons. And I really recommend that you keep it that way. In effect, what that means, the judge is saying, "Don't discuss the terms of it."

THE COURT: Okay.

(Emphasis Added).

On June 18, 1991, Steak & Ale contacted the attorneys for Ms. Leal and advised them Steak & Ale was revoking its consent to the

---

**2.** Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T

CODE ANN. § 74.003(b) (Vernon 1988).

settlement agreement. Less than 24 hours later the trial court entered a purported agreed judgment in favor of Leal for $2 million. Steak & Ale objected to the judgment on the basis that it had revoked the agreement, that it was not given reasonable notice of the judgment hearing, and that it wanted to present evidence of fraud perpetrated by Ms. Leal.

## JUDGMENT

A party may revoke its consent to settle a case anytime before judgment is rendered. *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874–75 (Tex.1982). Consequently, if the trial judge did not render judgment on May 14, Steak & Ale had the unequivocal right to withdraw from the settlement agreement.

Ms. Leal asserts that judgment was rendered on May 14th and, in support thereof, cites the trial judge's statement at the June 19th hearing whereby the judge recalled that he had rendered judgment on May 14th.

The trial judge may have intended to render judgment on May 14th but he certainly did not announce a rendition. *See Intercoastal Warehouse Corp. v. Clear Lake Nat'l Bank*, 795 S.W.2d 294, 296 (Tex.App.—Houston [14th] Dist.1990, writ dism'd w.o.j.). The judge merely announced his approval of the settlement. When asked to approve the settlement for $2 million, the court admonished Ms. Leal that "once this *judgment is signed and I approve it*, everything else, it's full, final and complete." The court asked Ms. Leal, "And you want me to *approve the settlement and sign the Judgment*?" The trial judge concluded, "I'll approve *the settlement.*" It is apparent to me that the judge was only approving the settlement while postponing rendition of judgment for a later date. His intention to render at some future time is no rendition. *See Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex.1976).

Moreover, the judgment entered June 19th did not follow the conditions of the settlement agreement.

A final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement. *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex.1976); *Liberty Mut. Ins. Co. v. Auyon*, 709 S.W.2d 698, 700 (Tex.App.—San Antonio 1986, no writ). The court has no power to supply terms, provisions, or essential details not previously agreed to by the parties. *Delta Drilling Co. v. Cruz*, 707 S.W.2d 660, 669 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Where the judgment fails to conform to the settlement agreement, the judgment will not be enforced. *Delta Drilling Co.*, 707 S.W.2d at 669.

The parties' settlement agreement neither stipulated that a judgment would be entered against Steak & Ale nor did the agreement stipulate Steak & Ale's liability. It is obvious from the testimony that the parties contemplated either a take nothing judgment in favor of Steak & Ale or a dismissal. A monetary judgment could not be rendered under this settlement agreement. Additionally, the agreement required that the amount of the award could not be divulged. Consequently, the judgment could not disclose the amount of the settlement, but it did. Because the final judgment was not in strict or literal compliance with the agreement, it should not be enforced.

Upon revocation of the agreement before entry of judgment, the trial court was left with no other option than to set aside the agreed judgement. Ms. Leal's recourse is governed by the law of contracts which must be determined in a separate suit. *See Stewart v. Mathes*, 528 S.W.2d 116, 118 (Tex.Civ. App.—Beaumont 1975, no writ). I am of the opinion that as a matter of law Steak & Ale revoked the settlement agreement prior to the rendition of the agreed judgment. Consequently, the judgment is void.

For these reasons, I dissent.

HARDBERGER, Justice, joined by CHAPA, Chief Justice, and LOPEZ and STONE, Justices, concurring in denial of en

banc consideration of appellant's motion for rehearing.[1]

[Filed August 19, 1994]

I concur in this court's decision not to rehear this case en banc. This opinion respectfully responds to the ably written dissent on our en banc decision. While I agree with some of the dissent there are a few, but important, differences.

The summary of my concurrence, joined in by the other undersigned justices, is as follows:

1. The trial court rendered judgment at the May 14, 1991 hearing. The word "render" was not used, but it did not have to be. There is no "magic" word.

2. The effect of the rendered judgment was to make the settlement final, *under ordinary circumstances.*

3. There is sound public policy, and much written law, that promotes finality of settlements, *under ordinary circumstances.*

4. Steak and Ale requested and was entitled to, a hearing on their motion of newly discovered evidence which they say, and have some evidence to support, takes this settlement out of the "ordinary circumstance." We have ordered that hearing.

5. If Steak and Ale can prove at the hearing that a fraud was committed, the settlement and the judgment should be set aside and a new trial granted.

6. If they cannot show this, the settlement stands and the judgment should be enforced.

7. This court is not the appropriate court to hold a fact finding hearing about whether a fraud was committed. That is the job of the trial court.

8. I recognize, as the dissent points out, that there is already "some evidence" of fraud in the record. But "some evidence" does not necessarily mean it happened. A cornerstone of the law is that due process demands a hearing before a conviction. Certitude is worth a little delay.

9. An en banc hearing, which is very rare, is inappropriate in this case at this time when there hasn't even been a hearing in the trial court.

10. Steak and Ale wanted a hearing on their newly discovered evidence to support their motion for new trial. They were correct and they shall have that hearing.

All of the above points will be discussed in the following pages, with the appropriate legal authority.

### Settlements and Consent Judgments

There are important public policies which support settlements in general and consent judgments in particular. Those policies include discouraging costly litigation, promoting peace and harmony in society, easing the burden on our courts, avoiding the uncertainty of submitting a dispute to a jury, and finally in buying peace. *See, e.g., Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 4 (Tex. 1986); *Olivas v. State Farm Mut. Auto Ins. Co.,* 850 S.W.2d 564, 567 (Tex.App.—El Paso 1993, writ denied); *Hernandez v. Telles,* 663 S.W.2d 91, 93 (Tex.App.—El Paso 1983, no writ); *Alvarez v. Employers Fire Ins. Co.,* 531 S.W.2d 218, 221 (Tex.Civ.App.—Amarillo 1975, no writ); 12 Tex.Jur.3d *Compromise and Settlement* § 3 (1993). Many defendants find that bringing cases to an end, i.e. buying some peace, is worth a great deal. In fact that is the whole point in having trial courts render consent judgments. *See, e.g., Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288 (1951). The parties desire the finality of a judgment. Traditionally, consent judgments have been judicially favored. *See, e.g., Irwin v. Huey,* 23 S.W. 324, 325 (Tex. Civ.App.1893, no writ).

Private parties may settle lawsuits without court approval. *Ibarra v. Texas Employment Comm.,* 823 F.2d 873, 878 (5th Cir. 1987). The law only requires that the parties reduce their settlements to writing or that they be made in open court. Tex.R.Civ.P. 11; *Kennedy v. Hyde,* 682 S.W.2d 525 (Tex. 1984). The purpose for conducting the hearing in this case was to have the court render a consent judgment in order to put an end to

---

1. Justice Tom Rickhoff not participating in decision on Appellant's Motion for En Banc Consideration of Motion for Rehearing.

the litigation. That is exactly what the court did. Steak & Ale now claims that the court did not render a consent judgment. However, no matter which party is trying to escape the effect of a consent judgment the rules regarding the finality of settlements and consent judgments benefit all parties.

Consent judgments favor everyone. Neither plaintiff nor defendant are well served by walking away from settlements not knowing if they are going to be revoked the next day. This is a case where the defendant feels that it was treated unfairly and wants to withdraw from the settlement. But it is equally commonplace for plaintiffs to settle their case one day and after consulting with well-meaning friends and relatives decide the next day that they were underpaid and want to withdraw their consent to settlement. The general rule is that once a judgment is rendered on a settlement, it is final. This is not to say, and the majority does not say, that the consent judgment may never be overturned. It can be. Fraud will overturn it. Where a party to a contract perpetrates a fraud, there is no meeting of the minds. It is an agreement built on deliberately false premises and once proved the law will show it no mercy.

### Judgment Was Rendered at May 14 Hearing

Under Texas law, a litigant may revoke his consent to settle a case at any time before judgment is rendered. *Samples Exterminators v. Samples,* 640 S.W.2d 873, 874–75 (Tex. 1982). Judgment is rendered whenever the judge officially announces his decision in open court, or files a memorandum with the clerk. *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 59 (Tex.1970). Entry of judgment is a ministerial act which memorializes the judicial act of rendition. *Flores v. Onion,* 693 S.W.2d 756, 758 (Tex.App.—San Antonio 1985, no writ).

At issue is whether the trial judge rendered judgment at the time the settlement agreement was dictated into the record. The dissent is essentially contending that, because the trial judge never said "I render," no rendition occurred. However, Texas law does not require such magic words. *Giles v.*

*Missouri–Kansas–Texas R.R. Co.,* 712 F.Supp. 542 (E.D.Tex.1989); *Samples,* 640 S.W.2d at 875. The trend of the law is away from the use of "magic words." When deciding whether a consent judgment was rendered a reviewing court looks to the entire record of the hearing and the judge's words are interpreted in the context of the hearing. *See, e.g., Kelley v. Pirtle,* 826 S.W.2d 653, 654 (Tex.App.—Texarkana 1992, writ denied); *Giles,* 712 F.Supp. at 545.

The dissent dismisses the *Giles* case. It is clearly on point, and remarkably similar to this case. *Giles* was also a personal injury suit. The case was pending before the 336th District Court in Grayson County, Texas when on March 28, 1988, lawyers for both sides announced that they had settled the case. The settlement was dictated into the record whereupon the following exchange took place:

MR. WOLFE [counsel for defendant]: Judge, if I could just ask one or two questions.

THE COURT: Please go ahead, sir.

MR. WOLFE: Mr. Giles, as we normally ask in these situations: You don't have any questions, do you, sir, in regard to the terms of this settlement? Is there anything about it that is unclear to you, as far as the terms of the settlement?

MR. GILES: I understand.

MR. WOLFE: And, of course, you understand this is in the nature of a final settlement, regardless of what may happen in the future in regard to yourself. That is, if your condition should not improve or anything else should happen after this date, it would then be too late to come back in and reopen the matter and have any further action taken on it. Do you understand that?

MR. GILES: Yes, sir.

THE COURT: And are you asking the Court to *approve the settlement* the way that it is entered into here?

MR. GILES: Yes, sir.

MR. WOLFE: I believe that's all I have.

THE COURT: All right. *The Court will approve the settlement then.*

*Giles,* 712 F.Supp. at 544 (emphasis added). Subsequently, Mr. Giles spoke to some friends who expressed the opinion that he had not received a fair settlement. Giles decided to withdraw from the settlement. Giles nonsuited the state court action and refiled the suit in federal court. The defendant filed a summary judgment motion asserting that the state district court had rendered judgment at the hearing on the settlement.[2] The federal court agreed, and after reciting the above quoted exchange and reviewing the identical cases cited by the dissent stated that: "Texas cases leave little doubt that the court in Grayson County rendered judgment in this case on March 28, 1988." *Id.*

In reaching its conclusion that judgment was rendered the *Giles* court made the following observations which are particularly relevant to the present case:

> There is no material difference between the words "I render judgment based on the agreements" and "the Court will approve the settlement." Texas law does not require specific words of rendition, but merely states that "rendition of judgment is the pronouncement by the court of its conclusions and decision upon the matter submitted to it for adjudication...." *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289, 292 (1953), overruled on other grounds, *Jackson v. Hernandez,* 155 Tex. 249, 285 S.W.2d 184, 191 (1955). Nor is any uncertainty raised by the use of the word "approve." Texas procedural rules require formal "approval" of settlements only in a small number of instances, notably class actions and cases involving minors. See Tex.R.Civ.P. 42(e), 44(2). The entire proceeding in chambers would

therefore become meaningless if the word "approve" were construed to effect anything other than a rendition. It is additionally clear that the parties, as well as the court, recognized the nature of the proceeding in chambers; as part of the settlement Giles "hereby tenders his resignation," and understood that he could not reopen the matter "after this date."

*Giles,* 712 F.Supp. at 545.

In the instant case, as in *Giles,* the same words were used, and the only thing left to do was for the parties to draw up the paperwork and the court to sign it.

The great majority of settlement hearings in this state are ended by the words "The court will approve the settlement," or "The Court approves the settlement." The dissent may be technically correct in saying that it is more proper to say "I render judgment." Render is a word more written than spoken though. It usually appears for the first time in the written document that memorializes the approved settlement. Whatever words are used though the question is one of finality. Substance over form. "Magic words" have been in a long retreat for several years.

The record in this case is clear that the trial court did in fact render judgment at the May 14, 1991 hearing. Although, the incantation "I render judgment" is absent, the trial court's statement when read in the context of the record as a whole demonstrates that the trial court intended and in fact did render judgment. In the context of this case, there is no material difference between the words "I render judgment" and "I'll approve the settlement."[3] The trial judge had the whole matter before him when the settle-

---

2. It is interesting to note that Giles also claimed that the settlement had been procured by fraud on the part of the railroad company. *Giles,* 712 F.Supp. at 547.

3. I recognize that "mere approval" of a settlement does not necessarily equal rendition. Clearly, sometimes approval does equal rendition and sometimes it does not. In deciding whether rendition occurred courts are looking at something more than "mere approval."

The appellate courts are looking at context. An approval does constitute rendition when, in context, it reveals itself to be an official present-

sense judicial determination of the matter before the court. *See, e.g., Samples Exterminators v. Samples,* 640 S.W.2d 873 (Tex.1982); *Skidmore v. Glenn,* 781 S.W.2d 672 (Tex.App.—Dallas 1989, no writ); *Giles v. Missouri–Kansas–Texas Railroad Co.,* 712 F.Supp. 542 (E.D.Tex.1989). An approval does not constitute rendition when, in context, it is apparent that some future action was indicated or when the "approval" lacked official status. *E.g., Buffalo Bag Co. v. Joachim,* 704 S.W.2d 482 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Grasso v. Ellis,* 608 S.W.2d 347 (Tex.Civ.App.—San Antonio 1980, no writ).

ment was dictated into the record. There were no matters left hanging. There was nothing more left to decide and the case was concluded. Rendition occurred.

The dissent seems to imply that this court does not like the rule of law that if a party withdraws its consent prior to entry of judgment then a court cannot render a consent judgment. *See Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442, 444 (Tex.1983); *Samples Exterminators v. Samples,* 640 S.W.2d 873, 874–75 (Tex.1985). There is no question that we are bound to follow the law as set forth in the preceding cases. But the converse of the foregoing rule is also true. Once a consent judgment has been rendered a party cannot withdraw its consent to that judgment. Whether we like this rule of law or not, the Supreme Court has announced this rule also, and we have to follow it. *See Quintero,* 654 S.W.2d at 444; *Samples,* 640 S.W.2d at 874–75; *Burnaman,* 240 S.W.2d at 291; *Ayala v. Minniti,* 714 S.W.2d 452, 457 (Tex.App.—Houston [1st Dist.] 1986, no writ).

### Fraud

I disagree with the dissent for another fundamental reason. The dissent assumes fraud despite the fact that there has been no evidentiary hearing and no judicial determination of fraud. In fact the entire dissent is premised on the notion that fraud has been established. Appellee, Annie Leal, denies the fraud. Appellant, Steak and Ale, says there is fraud. So the matter is in dispute. There has been no evidentiary hearing on the issue of fraud. I refuse to ignore traditional judicial process and make factual findings in the absence of an evidentiary hearing at the trial court level. *See Hensley v. Salinas,* 583 S.W.2d 617 (Tex.1979). The people of Texas through their constitution and legislature have determined that the trial court is the proper initial forum for resolving factual disputes. TEX. CONST. art. 5 §§ 6, 8; TEX.GOV'T CODE ANN. §§ 22.220, 24.007–24.008 (Vernon 1988). That is why this case should be remanded to the trial court for an evidentiary hearing on Steak and Ale's Motion for New Trial.

Steak and Ale asked for a hearing on their newly discovered evidence at the trial court and asked for the hearing again at this court. The majority opinion gives them the relief they asked for—a full blown evidentiary hearing on the issue of fraud. What is the harm in having a hearing? There should be a hearing before there's a hanging if there's going to be a hanging.

I understand the dissent's position that there is already some evidence in the record to support a finding of fraud. But there has been no hearing before the ordinary trier of fact. There have been no live witnesses, no opportunity for cross-examination, no opportunity for either side to properly develop a record. The majority of this court feels that the ordinary process of justice should be followed. The trial court in this case is highly experienced and the trial forum infinitely better suited to ferret out the truth than this court.

If the facts are as the dissent says they are—fraud in all particulars—then the only criticism is that a hearing delays the final result. If it is fraud today then it will still be fraud tomorrow. If it is not fraud then an injustice would have been done to set aside the judgment. Our difference is not in principle. It is in the procedure of determining whether there has been fraud. Certitude is worth a small delay. If a man is found with a smoking gun in his hand and there is a body nearby who has been shot there is some evidence of murder—but a trial is required before punishment can be imposed.

More than two million dollars is at stake here. Not to mention a few reputations. Isn't that worth a hearing?

There is no disputing that fraud vitiates everything it touches. *Estate of Stonecipher v. Estate of Butts,* 591 S.W.2d 806, 809 (Tex. 1979). Clearly, if fraud is found by the trial court then the consent judgment is vitiated and must be set aside. *See, e.g., Gregory v. White,* 604 S.W.2d 402, 403 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.); *Peddicord v. Peddicord,* 522 S.W.2d 266, 268–270 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.) (Keith, J., concurring). If the trial court determines that there has been no fraud then the judgment is binding. The

majority is not willing to prejudge the issue of fraud based on television and newspaper reports or the allegations of one party to a controversy.

"Our system of justice is capable of ascertaining the existence of fraud and collusion." *Price v. Price*, 732 S.W.2d 316, 318 (Tex. 1987). The dissent disregards the system of justice and declares that Steak and Ale discovered fraud. Maybe they did and maybe they didn't. We should let our system of justice make that determination.

Finally, it should be noted that the dissent is from this court's decision not to conduct an en banc rehearing. Texas Rule of Appellate Procedure 79(e) provides that "[a] hearing or *rehearing en banc is not favored* and should not be ordered unless consideration by the full court is necessary to secure or maintain uniformity of its decisions or in extraordinary circumstances...." (emphasis added). This appeal does not meet that exacting standard. In fact the records of the clerk reveal that in the past ten years there have only been two en banc rehearings submitted orally to this court. *See, e.g., Texas Workers' Compensation Comm'n v. Garcia*, 862 S.W.2d 61 (Tex. App.—San Antonio 1993, writ granted) (constitutionality of new workers' compensation act) and *Horner v. Reed*, 756 S.W.2d 34 (Tex.App.—San Antonio 1988, orig. proc.) (mandamus concerning judge's order that Mayor of Shavano Park resign from office). There have been approximately twenty-three en banc hearings since 1981 without oral argument, but obviously this is rare also.

This is an appeal concerning a settlement agreement. It is important to the parties but will hardly meet the above requirements. An en banc reconsideration would not be a good use of judicial resources, especially in light of the fact that there has never been an evidentiary hearing at the trial court level. The proper disposition is a remand to the trial court for an evidentiary hearing on Steak and Ale's Motion for New Trial.

PEEPLES, Justice, joined by BUTTS and REEVES, Justices, dissenting to denial of en banc consideration of appellant's motion for rehearing.[1]

[Filed August 19, 1994]

I respectfully dissent from the full court's decision not to rehear this case en banc pursuant to Justice Reeves' request. I think that Steak and Ale timely withdrew its consent to a settlement and that therefore the $2.2 million consent judgment cannot stand. I also conclude that the settlement was induced by fraud, which makes the majority's holding especially erroneous.

This appeal justifies en banc review for two reasons: (1) The panel opinion has refused to let a litigant withdraw consent to a settlement while there was still time to withdraw. After defendant Steak and Ale agreed to settle with plaintiff Leal, it learned about her open and public physical activities, which contradicted the salient part of her case at trial—her contention that she was wheelchair-bound for life and could walk only with assistance. The issue here is not simply whether a sum of money changes hands. Nor is the issue whether litigants may change their minds and back out of settlements with impunity. At stake, because of the circumstances detailed below, is the credibility of our civil justice system and its ability to do justice and to correct injustice.

(2) The panel opinion muddles the law of consent judgments and rendition, and how they are reviewed on appeal, so badly that the full court should correct it. The opinion makes the extraordinary holding that a trial judge can look back and make a fact finding that he rendered judgment, and this court will then review that finding to see if the "evidence" is factually and legally sufficient to support it. In my view, an appellate court simply looks at the rule 11 record—in this case, the court reporter's statement of facts—and determines from that record whether the court rendered judgment when the parties still agreed on the terms. Our own opinion in *Grasso v. Ellis*, 608 S.W.2d 347 (Tex.Civ.App.—San Antonio 1980, no

1. Justice Tom Rickhoff not participating in decision on Appellant's Motion for En Banc Consid-

eration of Motion for Rehearing.

writ), is closely in point. We should follow it, try to distinguish it, or overrule it en banc, not ignore it as the panel majority has done.

The record establishes the following facts, and the panel majority does not dispute them. Annie Leal sued Steak and Ale for injuries she sustained on its premises when a waiter dropped a tray on her head. At trial her evidence showed a serious injury that confined her to a wheelchair and prevented her from driving or doing ordinary chores. In voir dire and opening statement, her lawyers described her as "permanently crippled," "confined to a wheelchair," and able to walk only with assistance. From the witness stand, she described herself as unable to walk without personal assistance or a walker, unable to walk unaided to another person in the courtroom, and ambulatory only in her home (where she could hold onto walls and furniture for support). Steak and Ale's brief (supported by four affidavits presented in support of the motion for new trial) asserts that at trial Leal was helped onto and off the witness stand; Leal's briefs do not dispute this statement, and we may therefore accept it as correct. See TEX.R.APP.P. 74(f). Her settlement video describes her as a "crippled person," a "partial paraplegic," "ambulatory with a walker"; it says she "has difficulty on some types of pavements and sidewalks" and that some days she is "a prisoner in her own bed." This was the case Leal presented. The litigants settled the case mid-trial for $2.2 million before Leal's testimony was finished.

Before the money changed hands, one of the defense team's legal assistants happened to see Leal in "very high heels, approximately three inches high" at a restaurant. The legal assistant watched Leal walk out of the restaurant and down the street to her car with no visible difficulty, talking to her date and reaching into her purse as she walked. Thus alerted, Steak and Ale performed surveillance on Leal and videotaped her off and on for five days. The videotapes show Leal driving two different automobiles, walking, climbing a stairway from the first floor to the second, shopping for clothes at a store (seen through a plate glass window) and walking away with a package in her hand, carrying a basket of laundry to her car, and generally going about her daily business without the kind of physical disabilities she alleged at trial. During five days of surveillance, she never uses a cane, walker, or wheelchair. Occasionally she limps, but most of the time she walks without difficulty. One sequence shows her moving quickly and nimbly across a street to her car during a lull in the traffic. Perhaps a dozen times she is seen getting into and out of her car with not the slightest difficulty.

Perhaps Steak and Ale should have insisted on an independent medical examination, as the panel suggests.[2] Perhaps Steak and Ale should have been more suspicious. But the issue here is not whether Steak and Ale should have discovered the fraud sooner. After all, her lawyers and doctors did not discover it. The issue is whether Steak and Ale withdrew its consent before the trial court rendered judgment.

I recognize that there has been no hearing devoted to the fraud issue and that is what will happen on remand. I have said Steak and Ale was defrauded because I conclude that the record shows fraud as a matter of law.

In this court, Leal has not challenged the accuracy of the videotapes, nor has she denied that she is the person depicted in them. Instead, she defends by confession and avoidance.

She first argues that Steak and Ale was caught unprepared at trial with no independent medical evaluation and with several witnesses stricken, that its unpreparedness prompted it to settle during trial, and that it sought to set aside the judgment to erase its mistakes. To accomplish this, she argues, Steak and Ale caught her walking and filmed it surreptitiously on videotape.

In addition, Leal's briefs say she never contended that she could not walk, but that

2. I think it degrades the legal profession and the civil litigation process for a court to encourage litigants to suspect fraud and to engage in relentless discovery. Instead of criticizing lawyers who did not uncover apparent fraud during discovery, courts should correct fraud when it is proven in time to correct it within settled legal rules.

she was in pain. I have concluded that the record does not bear out that contention.

During *voir dire,* Leal's lawyer told the jury panel: she has "no hope of diverting from the permanency that I have told you about, permanent brain damage, permanently crippled, permanently in pain"; friends "have been taking care of this girl, grocery shopping, cooking, helping her dress, that kind of thing"; "Annie came out of the operating room a paraplegic. She has now progressed somewhat. She's able to walk. . . . She walks with help. For instance, if one of us helped her she would walk a bit. So, therefore she's not really any longer a paraplegic, but she will have other adjectives to describe her paraplegia."

During *opening statement,* her lawyer said: "What we are going to show in this case is that Annie Leal is now a 24–year–old young lady confined to a wheel chair." "Annie is now what's known as a household ambulator . . . she can walk 10 feet or 15 feet if she holds onto a wall. She can walk with some assistance." "She has a lifetime not only of pain, repeated operations, but she's going to be confined to a wheelchair." "She will probably never work again."

Annie Leal *testified* on direct examination: "Q: Now Annie, the jury has seen you in a wheelchair. Can you walk? A: Not unless I have assistants helping me or the use of a walker. And at this particular time I was instructed not to use a walker because it was more painful for me to lift a walker. Q: Well, say on your own, could you walk from here to Timothy? A: No, Sir, I couldn't, not without someone walking me up over there." And later: "I'm still not able to do my own house cleaning or laundry."

Leal's *settlement videotape* made the following points about her physical condition. She is a "crippled person," a "partial paraplegic," "ambulatory with a walker"; she will have physical therapy for the rest of her life; she still requires the use of a walker; she "has difficulty on some types of pavements and sidewalks." It is "too early to tell whether she will be a normally functioning being"; some days she wakes up "a prisoner in her own bed."

Under this record, I conclude there is fraud as a matter of law. But even if there was no fraud, Steak and Ale was entitled to withdraw its consent for any reason, if the court had not rendered judgment.

Here Steak and Ale discovered Leal's post-settlement activities in time to withdraw its consent to the settlement. Any litigant can withdraw its consent to a settlement before the court renders an agreed judgment. To state the rule differently, a court cannot render a consent judgment if either party has withdrawn its consent before rendition. *See Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442, 444 (Tex.1983); *Samples Exterminators v. Samples,* 640 S.W.2d 873, 874–75 (Tex.1982); *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288, 291–92 (1951). The court may render judgment orally or in writing. *Reese v. Piperi,* 534 S.W.2d 329, 330 (Tex.1976); *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58 (Tex.1970). But the settlement terms and rendition must comply with rule 11 (written, signed, and filed with the court, or on the record in open court). *Kennedy v. Hyde,* 682 S.W.2d 525 (Tex.1984).

In my view, the settlement-rendition rule makes sense and is workable. There is something to be said for a symbolic pronouncement that converts an agreement of the parties into the judgment of the court. Wedding ceremonies, for example, usually conclude with a declaration that the groom and bride are now husband and wife.

The settlement-rendition rule does not burden courts or litigants in the slightest because compliance is utterly simple. When a case is settled during trial and there is no time to prepare a typewritten judgment, the parties and the court need to do only this: (1) state all the terms, (2) in compliance with rule 11, (3) as a precaution, ensure that the litigants understand the terms and the finality of the proposed settlement, and (4) ensure that the court makes the agreement of the parties the judgment of the court by rendering judgment. Words such as, "The agreement is approved; judgment is rendered," will suffice. If the trial court approves the agreement but neglects to render judgment, the lawyers should politely ask, "Is judgment rendered, Your Honor," or "Did the court

render judgment?" and insist on a judicial response in the same way they insist on other rulings when a court will not rule.

Under these longstanding rules, if the court rendered judgment on May 14, Steak & Ale had no right to back out on June 19. But if the court did not render judgment on May 14, Steak & Ale had an absolute right to back out and the court had no right to sign the judgment when it did. This is the clear meaning of *Quintero, Samples,* and *Burnaman.*

The issue, then, is whether the court rendered judgment on May 14. The mere approval of a settlement is not a rendition of judgment; the court must convert the agreement of the parties into the judgment of the court. *Formby's KOA v. BHP Water Supply Corp.,* 730 S.W.2d 428 (Tex.App.—Dallas 1987, no writ); *Buffalo Bag Co. v. Joachim,* 704 S.W.2d 482 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Grasso v. Ellis,* 608 S.W.2d 347 (Tex.Civ.App.—San Antonio 1980, no writ). As we said in *Grasso,* a trial court does not "approve" judgments; it "renders" them. *Id.* at 348. No magic words are required, but the court must say something to indicate its present intention to convert the parties' agreement into the court's judgment. I am not aware of any case that says "settlement approved" automatically equals "judgment is rendered."

The supreme court in *Samples* implicitly acknowledged that mere approval does not suffice for rendition. There the trial court said:

> It appearing to the Court that all of you did agree in open court to this settlement, the Court [1] approves the settlement made in open court and [2] orders all parties to sign any and all papers necessary to carry out this agreement and to carry out the agreement that was made and dictated into the record.

When one litigant tried to withdraw consent, the trial court denied permission to withdraw and signed a written judgment. The supreme court upheld the consent judgment because the court had ordered papers signed, not because the trial court's approval of the settlement constituted rendition of judgment. 640 S.W.2d at 875. If settlement approval

per se constituted rendition, the supreme court would have rested its decision on that ground. *Samples* means that rendition requires something more than mere approval of the settlement.

This area of the law requires a line of some kind. If approval of the settlement is by itself a rendition, we will soon have to decide whether silent approval or acquiescence without express words of approval is sufficient. In my view the supreme court has drawn the line at *rendition,* and even though the trial court does not have to use that particular word, the record must show *when* the court made the agreement the court's judgment. If consent is lacking at that time, the court cannot sign a judgment based on consent, which has been timely withdrawn.

As I read the May 14 statement of facts, the court merely approved the agreement and did not render judgment. The court said in effect that the settlement would be final when it signed a written judgment. The court said to Mrs. Leal:

> "You realize that *once this judgment is signed* and I approve it, everything else, it's full, final and complete? ... And you want me to approve the settlement *and sign the judgment*? ... I'll approve the settlement."

Because of the language emphasized in this quotation, I think there was not a present rendition of judgment on May 14. The written judgment was not signed until June 19.

*Buffalo Bag* and *Grasso* are directly in point, and I am dismayed by the panel majority's failure to confront them. In *Buffalo Bag* the court summarized the settlement proceeding as follows:

> Counsel for appellees specified the terms of the agreement, which were dictated into the record, after which the trial court carefully questioned both sides as to their understanding of the terms and willingness to enter into the settlement agreement. Satisfied that both sides understood and consented to the agreement, the trial court *approved the settlement* and noted on the docket sheet "Judgment to be entered accordingly."

704 S.W.2d at 483 (emphasis added). This is precisely what happened in the present case, except that here the trial judge *said on the record* that he would be signing a written judgment and the matter would be final at that time; in *Buffalo Bag* the court *wrote on the docket sheet* that a written judgment would be signed reflecting the agreement.[3]

The concurring opinion relies on *Giles v. Missouri–Kansas–Texas R.R. Co.,* 712 F.Supp. 542 (E.D.Tex.1989). *Giles* itself does not discuss *Grasso,* and it distinguishes *Buffalo Bag,* in which the trial court used the words, "Judgment to be entered accordingly." Here the trial court used similar language, emphasized above. Thus *Giles* may be consistent with Texas law. But to the extent that the *Giles* court, sitting as an *Erie* court and applying state law, deviated from Texas law as declared in *Buffalo Bag* and *Grasso,* this court should not follow it.

I have no doubt that in our case Judge Curry *meant* to render judgment, and when everyone had left the courtroom he thought he had done so. But our inquiry is: what does the rule 11 record show? The trial court's subjective intent is immaterial, said the *Buffalo Bag* court: "[E]ven though it is certain that the trial court meant to render judgment at the time the agreement was presented and approved, we hold that the docket language by itself does not constitute a rendition of judgment." *Id.* at 484. "Judgment *is* rendered" would have sufficed; "Judgment *to be* rendered" was not a present rendition. *Id.* at 483–84.

*Grasso* held that "settlement approved" does not mean "judgment rendered." 608 S.W.2d at 347. An informal instrument entitled "Agreed jmt against Gerald R. Grasso for $20,000" was signed by the trial judge with the notation "Approved Aug. 15, 1979." This appellate court reversed because settlement approval did not constitute rendition, and because appellant withdrew consent before judgment was rendered later:

In his brief, plaintiff refers to the handwritten agreement dated August 15, 1979, as a "Judgment" which "was approved by Judge Preston H. Dial Jr." A trial judge does not "approve a judgment. The judge renders a judgment. The record does not disclose that Judge Dial rendered any judgment whatever on August 15, 1979." *Id.* at 348. The court also held that the parties' belief that a judgment had been rendered is of no importance. *Id.*

It is true that the *Grasso* agreement was not filed with the court papers, but the court did not rely on that fact. It rested its decision (that a litigant could withdraw consent) on the holding that approval of the agreement (which called itself an agreed judgment) was not a rendition of judgment.

Leal relies on *Skidmore v. Glenn,* 781 S.W.2d 672 (Tex.App.—Dallas 1989, no writ). There the trial court first made sure that the parties understood and agreed on all terms. The court then said, "I'll enter an Order approving the agreement." The appellate court held that this was a present rendition, not a mere intention to render in the future. Accordingly the appellant could not later withdraw consent. The key words are "enter an Order," words suggesting rendition. I agree that the trial court's statement in *Skidmore* meant "I *am entering* an Order approving the agreement" not "I *will enter* an order in the future approving the agreement." This use of "I'll" resembles statements judges often make during trial, such as, "I'll overrule the objection," which means "I am overruling the objection," not "I am going to overrule the objection sometime in the future." *Skidmore* thus stands for the correct rule: if the record shows present rendition, neither litigant can withdraw consent later, but if the record shows simply the intention to render judgment in the future, either litigant can withdraw consent until there is actual rendition.

The panel utterly fails to come to grips with these authorities. Instead it cites *Esco-*

---

**3.** The appellant in *Buffalo Bag* withdrew consent because the written judgment changed the agreed terms, but the court rested its reversal of the judgment squarely on its holding that the appellant withdrew consent before the court had rendered judgment. The court noted that the appellants were abusing the judicial process. *Id.* at 484. The same is not true in this case because of the apparent fraud.

bar v. Escobar, 711 S.W.2d 230 (Tex.1986), for the notion that whether a judgment was rendered is a fact question. *Escobar* dealt with a nunc pro tunc judgment in which there was no statement of facts. It has no relevance to consent judgments. Where consent judgments are at issue, I think courts decide when there was rendition as a question of law by looking at the rule 11 settlement record. *Escobar* certainly has no relevance when the court reporter made a record, which we can interpret in accordance with settled principles.

\*    \*    \*    \*    \*    \*

In some quarters, it is fashionable to believe that appellate courts first determine the result they desire and then they come up with the reasoning to support it. Here the panel has produced neither a right result nor persuasive reasoning. Why would an appellate court go through mental gymnastics to prevent a litigant from withdrawing its consent to a settlement under the circumstances shown by this record? I do not know, and I dissent because that is what the panel has done. And it has unsettled the law of consent judgments in the process.

The supreme court has said that fraud vitiates everything it touches. *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 809 (Tex.1979). Concerning settlement agreements, we are told that "an agreement in compliance with [rule 11] is subject to attack on the grounds of fraud or mistake." *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex. 1984). And we have been given this bold assurance: "Our system of justice is capable of ascertaining the existence of fraud and collusion." *Price v. Price*, 732 S.W.2d 316, 318 (Tex.1987). I think Steak and Ale withdrew its consent before rendition and that the new-trial hearing on remand is not necessary.

I would grant en banc review, reverse the judgment, and remand the cause for a new trial.